UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JAMES W SCOTT

CASE: 18-CV-60178-ALTONAGA/SELTZER

*Plaintiff.*

vs

EXPERIAN INFORMATION
SOLUTIONS, INC.; TRANS UNION
LLC; EQUIFAX, INC.
*Defendants*



FILED BY _____ D.C.

MAR 05 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

### PLAINTIFF'S RESPONSE IN OPPOSITION AND MEMORANDUM TO DEFENDANT TRANS UNION LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

COMES NOW the Plaintiff, James W Scott, who hereby submits his Response to Defendant's Motion to Dismiss and states as follows:

### BACKGROUND

The matter before the Court is simple. The Plaintiff made two very detailed and specific requests for his **full consumer file disclosure** under 15 U.S.C. § 1681g in an effort to obtain and review ALL information that Trans Union had in its files relating to him as a consumer. *See Exhibits 1 & 2 from Amended Complaint.* The FCRA requires, among other obligations, that CRAs "clearly and accurately disclose" to a requesting consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The Plaintiff did not ask for a credit report, a credit score, risk score, predictors or other things relating to the processes and procedures of how Trans Union creates reports, maintains, analyzes or disseminates information relating to him or its customers. James W Scott simply requested a **full consumer file disclosure** of what Trans Union was in possession of in any form or in any place that relates specifically to

him as a consumer. *See Exhibits 1 & 2 from Amended Complaint.* It was a very unambiguous and straightforward request made under the law. In response to Plaintiff's multiple requests, Trans Union provided nothing more than a 9 page credit report twice with the first page greeting "Enclosed is the Trans Union **Personal Credit Report that you requested**." Plaintiff did not request a credit report but instead made a request for his <u>**full consumer file disclosure**</u> of all information contained in his Trans Union files and that is not what he received after multiple requests. As a result, Plaintiff filed this instant case.

## STANDARD OF REVIEW

Courts view Rule 12(b)(6) motions with disfavor. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("We hasten to add that [a 12(b)(6) motion] is viewed with disfavor and rarely granted."). A complaint should be upheld if it is "supported by [a] showing [of] any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007). When considering a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff. Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008). Additionally, when considering a motion to dismiss the court should consider the plaintiff's allegations as true. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

As courts throughout Florida have consistently held, Twombly and Iqbal do not change the fundamental analysis that a district court engages in when ruling on a motion to dismiss, i.e., accepting all plausible allegations as true and determining whether the complaint contains „a short and plain statement of the claim showing that the pleader is entitled to relief."" Smith v. Wm. Wrigley Jr. Co., 663 F.Supp.2d 1336, 1341 n. 3 (S.D. Fla. 2009). The issue for consideration on a motion to dismiss is not whether the Plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims. " Little v. City of

North Miami, 805 F.2d 962, 965 (11th Cir. 1986).

In addition, A motion to dismiss for failure to state a claim must be viewed in conjunction with and balanced against the general rules of leading; on the one hand, a motion to dismiss for failure to state a claim should only be granted if, after accepting all well-pleaded allegations in the Plaintiff's complaint as true, it appears certain that the Plaintiff cannot prove any set of facts in support of his claim entitling him to relief; on the other hand, under the general rules of pleading, a complaint need only set forth a short and plain statement of the claim showing that the pleader is entitled to relief. *Jordan V. Western Distributing Co.,* d. Md. 2003, 286 F.Supp.2d 545, affirmed 135 Fed. Appx. 582, 2005 WL 1009642. Federal Civil Procedure 1773. When complaint is submitted pro se, allegations, however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers, and in cases in which a pro se plaintiff is faced with motion to dismiss, <u>it is appropriate for court to consider materials outside of complaint to the extent they are consistent with allegations in complaint</u>. *Donhauser v. Goord,* N.D.N.Y.2004, 314 F. Supp.2d 119. Federal Civil Procedure 1832. Because federal courts simply require "notice pleading," complaint need not specify correct legal theory nor point to right statute to survive motion to dismiss. *Illinois Constructors Corp. v. Morency & Associates, Inc.,* N.D.Ill.1992, 802 F. Supp. 185, reconsideration denied. Federal Civil Procedure 1829. Dismissal for failure to state a claim is not favored by law. *F.D.I.C. v. Harrington,* N.d. Tex. 1994, 844 F.Supp. 300. Federal Civil Procedure 1721. Court is restricted to face of pleadings and may look only within the four corners of complaint in evaluating motion to dismiss for failure to state a claim. In re Catfish Antitrust Litigation, N.D.Miss.1993, 826 f.Supp.1019. Federal Civil Procedure 1829. Issue on motion to dismiss for failure to state a claim upon which relief can be granted is not whether plaintiffs will prevail, but whether they should be afforded opportunity to

offer evidence to prove their claims. *Aguilar V. United Nat. Ins. Co.*, D.Conn.1993,825 F.Supp. 456. Federal Civil Procedure 1721. Pro se complaint, no matter how unartfully pleaded, must survive motion to dismiss for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Sculthorpe v. Virginia Retirement System,* E.D.Va.1997, 952 F.Supp.307 Federal Civil Procedure 1773.

## ARGUMENT AND AUTHORITIES

1. **Plaintiff's Complaint Fails to State Facts Sufficient to Support a Claim for Relief Pursuant to § 1681g**

Plaintiff made two very specific requests for his full consumer file disclosure pursuant to 15 U.S.C. § 1681g to be sure that there would be no misunderstanding as to exactly what it was he was requesting, anticipating that Trans Union may respond by sending just his conventional credit report in response to his request. *See Exhibits 1 & 2 from Amended Complaint.* When he received the first response which was exactly as anticipated (a conventional credit report) he made a second and final very detailed request to be sure that Trans Union knew without any doubt what he was requesting and entitled to under the statute. *See Exhibits 1 & 2 from Amended Complaint.* Once again, Trans Union responded with nothing more than a conventional credit report which was not responsive to his request for his full consumer file disclosure. Plaintiff made no request for any credit score, or other risk scores or predictors and made no requests for any information relating to any processes or procedures of Trans Union. Plaintiff's Complaint pleads in detail precisely what he was asking for, what Trans Union failed to do to comply with his request and his Amended Complaint is supported by exhibits.

2. **"Consumer file" is defined as the information contained in a consumer's disclosure/credit report**

In its argument for dismissal, Trans Union immediately begins by conflating the words

disclosure and credit report (disclosure/credit report) by arguing they are synonymous. Nowhere in the FCRA is the term "disclosure/credit report" used. A credit report is a disclosure of course... of credit information. That does not mean it is necessarily a disclosure of **all** information held in a consumer's file at a certain time. The plain language of the FCRA requires, among other obligations, that CRAs "clearly and accurately disclose" to a requesting consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* § 1681a(g). The United States Court of Appeals for the Seventh Circuit has found that "[t]he term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency *that might be furnished, or has been furnished, in a consumer report on that consumer.*" *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007) (emphasis in original) (citing 16 C.F.R. pt. 600, app. § 603). Trans Union cites *Gillespie* in their arguments stating that Federal Courts and the FTC have limited the scope of the term "file" to all information on the consumer included in a consumer report that would be sent to a third party. The flaw in using that argument in this case is that it is taken out of context and misinterpreted as well as an incomplete statement. Trans Union later states more completely and truthfully about *Gillespie: Gillespie* cites the FTC's commentary on § 1681g(a)(1) regarding the limited scope of the term "file": "The term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that **might** be furnished, or **has** been furnished, in a consumer report on that consumer." *Id* at 909 (quoting 16 C.F.R. pt. 600, app. § 603). (Emphasis added)
The United States Court of Appeals for the Third Circuit has ruled that a CRA may not evade disclosure requirements by, for example, "contracting with a third party to store and maintain

information that would otherwise clearly be part of the consumer's file and is included in a credit report." *Cortez v. Trans Union, LLC.*, 617 F.3d 688, 711 (3d Cir. 2010), or by using "[c]orporate organization, reorganization, structure, or restructuring." To circumvent reporting requirements. 12 C.F.R. § 1022. 140(a). *Jones v. Equifax* No. 3:15-cv-112-RJC-DSC United States District Court, W.D. North Carolina, Charlotte Division April 11, 2016. Defendant's argument has no merit when looking at the plain language of the statute and case law.

### 3. Plaintiff confuses a "consumer disclosure" with "credit report"

It is apparent from the Defendant's selective reading of the Plaintiff's Amended Complaint that the confusion rests solely with the Defendant in terms of what is the difference between a "consumer file disclosure" and a "credit report." Defendant cites *Pettway v. Equifax Info. Servs., LLC,* 2010 U.S. Dist. LEXUS 13800, at *22 (S.D. Ala. Feb 12, 2010). A "consumer report" or "consumer credit report" is different from a consumer disclosure." Plaintiff asked for a **full consumer file disclosure** not a credit report. "Consumer reports" are generated by a CRA and delivered to a third party for use in deciding whether the consumer is eligible for credit or other purposes. 15 U.S.C. § 1681a(d). Plaintiff asked for a **full consumer file disclosure** not a credit report or consumer report. Defendant also cites *Wantz v. Experian Information Solutions.*, 386 F.3d 829, 834 (7th Cir. 2004). This case bolsters what constitutes a credit report or a consumer report. Plaintiff couldn't agree more, but that is not what is at issue in this case. Plaintiff asked for a **full consumer file disclosure** not a credit report or consumer report. The only confusion the Plaintiff has, is in regards to why the Defendant used these two cases to support his argument.

### 4. Plaintiff admits he received two copies of his consumer disclosure

Plaintiff readily admits he received two copies of his credit report which is **one type of**

**disclosure.** The Plaintiff asked very specifically for something other than a credit report. He requested a full consumer file disclosure which would include "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). FCRA defines "file" as all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* § 1681a(g). The fact that Trans Union sent the Plaintiff a credit report does not equate to it providing his requested full consumer file disclosure unless it has no other information in any of its files that relates to Plaintiff whether it **has** been or **might** be furnished in a consumer report of **any** kind. If that is the case, why then, does Trans Union not just state categorically it has no other information in its files relating to Plaintiff in its motion to dismiss to bring this case to a close? The issue here is whether there was information in Trans Union's files at the time of Plaintiff's request that was required to have been provided to him pursuant to his lawful request and was not. That is the sole claim in this lawsuit and the only issue before this Court. Defendant's argument that Plaintiff received the full consumer file disclosure that he specifically requested has no merit and should be rejected by the Court.

5. **Plaintiff provides no factual basis for his assertion that the "Trans Union Credit Report" was not his "full consumer file disclosure"**

As previously stated in the past arguments, Plaintiff requested a full consumer file disclosure and not a "credit report." Why would the Plaintiff not believe that the "Trans Union Credit Report" was not his "full consumer file disclosure?" Well it would appear that the other major CRAs as well as Trans Union have diligently conditioned the courts, regulators and the public to think of a full file disclosure (which is precisely what a consumer is entitled to under the law *when a proper request is made*) as a credit report which contains only certain information they retain about consumers so what is provided and potentially subject to dispute is minimal. There is a financial incentive for them to do so as explained by Aaron Klein of the

Brookings Institute in an article published by CNBC on September 27, 2017. *See https://www.cnbc.com/2017/09/27/the-real-problem-with-credit-reports-is-the-astounding-number-of-errors-equifax-commentaty.html*.

> More than one in five consumers have a "potentially material error" in their credit file that makes them look riskier than they are. Lenders respond to this incorrect data by offering you higher interest rates, less favorable terms, or denying credit if the error makes you look too risky.
> With money on the line, you might assume that the credit reporting system would fix the problem. In reality, it is the opposite. Speed and volume are favored over accuracy. Large-scale inaccuracies are tolerated. The costs of correcting the data outweigh benefits for the credit bureaus, though, not the consumers.
> Given the importance of credit scores, why are they so inaccurate? Three reasons: size, speed and economic incentives of the system. Each of the major bureaus has over 200 million credit files that, on average, contain 13 past and current credit obligations, resulting in 2.6 billion pieces of data. Each month, more than 1 billion pieces of data are updated, requiring a speedy system. With so much data coming from so many sources, so quickly, errors are inevitable (especially if you have a common name).

Plaintiff has used the website annualcreditreport.com to request copies of his **credit reports** from the three major CRAs in the past. In this case, he requested something different, he requested his full file disclosure directly with the three CRAs and not his credit report. Since the hack of the Equifax database and all the media attention it has created, the Plaintiff became aware that there appeared to be additional information about a consumer in a CRA's files than what was provided in the credit reports he obtained from annualcreditreport.com. The Court should take note that the annualcreditreport.com website (which was created and is maintained by the major CRA's) has No place on it where a consumer can request their full consumer file disclosure but instead only provides the consumer with the option to request a credit report. How convenient……Sometimes one just has to look at the obvious. If Congress only intended that a consumer get a credit report upon a request, would they not have simply stated so in the statute rather than being very specific in the language of § 1681g stating a full file disclosure? A common sense reading of the plain language of the statute reveals there was to be more than just

Plaintiff's Response in Opposition

a credit report provided to the consumer upon a request for their full file disclosure **If** there was more information held in the CRA's files. Is it any wonder why so many consumer's lives are disrupted and sometimes ruined because of inaccurate and incredibly harmful consumer information disseminated by the CRA's because people don't know it even exists and if they had known, would have had the opportunity to dispute and seek correction of it before massive and harmful damage occurred? The problem of inaccurate data isn't just limited to specific credit account information as Trans Union and the other CRA's would have us believe. It is hidden data that may often be inaccurate and it is <u>purposely not disclosed,</u> even when requested by a consumer like James W Scott for financial reasons that surely do not benefit the consumer.

 Trans Union also promotes videos on Youtube in its abilities to provide immediate information to its customers from its extensive criminal and eviction databases, and it cross-uses its credit and criminal record databases. *See* <u>http://www.youtube.com/watch?v=yXZZI9jO27Q;</u> Which is titled: (**TransUnion Background Data Solutions**) and <u>pateltransunionclassaction.com,</u> <u>http://www.youtube.com/watch?v=HR2oA18N5XY&list=UU2KeLg4EXenj_9JcUAxKs_w&index=2&feature=plpp_video</u>. It is obvious that these presentations do not just pertain to what a consumer receives in a conventional credit report. It goes far beyond this to say the least. There are numerous consumer reports that are generated by the CRA's from information they have in their files regarding such things as rental history, criminal background, public records, employment etc. For Trans Union to say that all they have to do is provide the Plaintiff with information specifically for a "consumer report" or "credit report" is fatally flawed. As previously argued and cited by Defendant, *Gillespie* is not analogous to this case. The issue in the *Gillespie* case was not whether Trans Union had provided a full file disclosure but rather that the Plaintiff brought the complaint because Trans Union failed to disclose ancillary items

Plaintiff's Response in Opposition

which the court found they are not required to do. *Gillespie* actually supports James W Scott's claim when read in the proper context as to what is a full consumer file disclosure.

Trans Union cites *Arista Records, LLC v. Doe* 3 604 F.3d 100 (2d Cir. 2010) and *Mathews v. Bowie County*, 2013 U.S. Dist. LEXIS 130978 (E.D. Tex. Sept. 13, 2013) in support of its argument on Plaintiff's "information and belief" statement. As is quite often the case the argument here by the Defendant actually supports the Plaintiff in that 1) the facts here are peculiarly within the possession and control of the Defendant (and would have to be revealed in Discovery and 2) the information is based on factual information known by Plaintiff from other cases involving Trans Union specifically that provides an inference of facial plausibility to his claims. After viewing the Trans Union's videos, how could the Plaintiff **not** believe that there had to be at least some information in their files that relates to him that **has** or **might** be furnished in a consumer report of some kind that had not been disclosed? The smokescreen defenses by Trans Union relating to Plaintiff's information and belief allegations are baseless.

## CONCLUSION

As a well- established major consumer reporting agency, Trans Union knows full well of the requirements of the FCRA and how it pertains to this case. They also know whether they have any information in their files that relates to James W Scott that was not disclosed to him after his request. The fact that they did not state categorically that they do not have additional information relating to James W Scott as a consumer in their files in their motion to dismiss would leave a reasonable person, including this Court, to reasonably assume there might be more information and that this case should go forward to Discovery to answer that question factually. Once again, Plaintiff requested a **full consumer file disclosure** and not a credit report or a consumer report.

**WHEREFORE,** because the Defendant has failed to bring any cognizable or legitimate arguments for dismissal before this Honorable Court, Plaintiff respectfully requests the Court to DENY Defendant's motion to dismiss and allow Plaintiff's claim to move forward to trial on the merits. In the event the Court finds that the Plaintiff has failed to state a claim as alleged by Trans Union, Plaintiff requests leave of this Court to Amend the Complaint to cure any deficiencies identified by this Honorable Court.

Dated: March 5, 2018

Respectfully Submitted,

_____
James W Scott
3457 Deercreek Palladian Circle
Deerfield Beach, Florida 33442
Jwsscott777@gmail.com
**954-540-0408 cellphone**

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2018, I filed the foregoing with the Clerk of the Court conventionaly. I also certify that the foregoing document is being sent by USPS to the following:

## SERVICE LIST

Franklin G. Cosmen, Jr.
Quintairos, Prieto, Wood & Bower P.A.
9300 S. Dadeland Blvd, 4th Floor
Miami, Florida 33156
Telephone: 305-670-1101
Email: fcosmen@qpwblaw.com
Counsel for Trans Union

John Anthony Love
King & Spalding
1180 Peachtree Street NE
Atlanta, GA 30309
404-572-4600
tlove@kslaw.com
Counsel for Equifax

Dated: March 5, 2018

_____
James W Scott