UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:18-cv-60178-CMA

JAMES W. SCOTT,

      Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS,
INC. et al.,

      Defendants.

_____/

**DEFENDANTS EQUIFAX INC., EQUIFAX INFORMATION SERVICES LLC,
AND TRANS UNION LLC'S COMBINED MOTION TO DISMISS FIRST
<u>AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT OF THE MOTION</u>**

J. Anthony Love
FL Bar No. 67224
King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
tlove@kslaw.com
*Attorney for Defendant Equifax Inc. and Equifax*
*Information Services LLC*

## TABLE OF CONTENTS

INTRODUCTION............................................................................................................1

STANDARD OF REVIEW .............................................................................................2

ARGUMENT ..................................................................................................................4

I.     EQUIFAX INC. IS NOT A CONSUMER REPORTING AGENCY AND, THEREFORE, SHOULD BE DISMISSED. ...........................................4

II.    MR. SCOTT'S FAC FAILS TO PLEAD FACTS SUFFICIENT TO SUPPORT A CLAIM FOR RELIEF PURSUANT TO § 1681g. ...................11

        A.    "Consumer File" Is Defined As The Information Contained In A Consumer's Credit Report/Disclosure. .......................................................12

        B.    Plaintiff Admits He Received A Copy Of His Credit Report/Disclosure From Equifax and Trans Union .................................13

        C.    Mr. Scott Provides No Factual Basis For His Assertion That The "Credit Report" He Received Was Not His "Full Consumer File Disclosure."..............................................................................................14

CONCLUSION ...............................................................................................................16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*17315 Collins Ave., LLC v. Fortune Dev. Sales Corp.*,
  34 So. 3d 166 (Fla. 2d DCA 2010) ........................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................2, 15

*Barkett v. Hardy*,
  571 So. 2d 13 (Fla. 2d DCA 1990) ...................................................................9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................2

*Bookworld Trade Inc. v. Daughters of St. Paul, Inc.*,
  532 F. Supp. 2d 1350 (M.D. Fla. 2007)................................................................9

*Brandywine Communications Techs., LLC v. Casio Computer Co. Ltd.*,
  912 F. Supp. 2d 1338 (M.D. Fla. 2012)..............................................................16

*Brooks v. Blue Cross Blue Shield of Fla., Inc.*,
  116 F.3d 1364 (11th Cir. 1997) .....................................................................2, 3

*Channing v. Equifax, Inc.*,
  No. 5:11-CV-293-FL, 2013 WL 593942 (E.D.N.C. Feb. 15, 2013)...............................6, 7, 11

*Crenshaw v. Lister*,
  556 F.3d 1283 (11th Cir. 2009) .........................................................................3

*Dania Jai–Alai Palace, Inc. v. Sykes*,
  450 So. 2d 1114 (Fla. 1984)........................................................................8, 9, 10

*Durham v. Bus. Mgmt. Assocs.*,
  847 F.2d 1505 (11th Cir. 1988) ........................................................................4

*Eagle v. Benefield–Chappell, Inc.*,
  476 So. 2d 716 (Fla. 4th DCA 1985) ...................................................................8

*Frihat v. Citimortgage, Inc.*,
  No. 07-CV-946, Doc. 60 (W.D. Mo. Dec. 1, 2009) .............................................7, 11

*Futch v. Head*,
  511 So. 2d 314 (Fla. 1st DCA), *rev. denied,* 518 So. 2d 1275 (Fla. 1987)...........................10

*Gershuny v. Martin McFall Messenger Anesthesia, P.A.*,
539 So. 2d 1131 (Fla. 1989)...................................................................9

*Greear v. Equifax, Inc.*,
No. 13-11896, 2014 WL 1378777 (E.D. Mich. Apr. 8, 2014) .......................................5, 6, 11

*Hekker v. Ideon Grp., Inc.*,
No. 95–681–Civ–J–16, 1996 WL 578335 (M.D. Fla. Aug. 19, 1996)...................15

*Hill v. Morehouse Med. Assocs., Inc.*,
No. 02–14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003)..............................15

*In re Hillsborough Holdings Corp.*,
166 B.R. 461 (Bankr. M.D. Fla. 1994.) ..........................................................7, 8, 9

*Holguin v. Celebrity Cruises, Inc.*,
No. 10-20215-CIV, 2010 WL 1837808 (S.D. Fla. May 4, 2010)..............................3

*United States ex rel. Jallali v. Nova Se. Univ., Inc.*,
No. 11-60342-CIV, 2011 WL 13175105 (S.D. Fla. Aug. 12, 2011) .......................15

*Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*,
162 F.3d 1290 (11th Cir. 1998) .........................................................................9

*Kindred Hospitals East, LLC v. Fox–Everett, Inc.*,
No. 3:12–cv–307–J–37MCR, 2012 WL 5467516 (M.D. Fla. Oct. 4, 2012) ..........................15

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
238 F.3d 363 (5th Cir. 2001) ...............................................................................4

*Long v. Slaton*,
508 F.3d 576 (11th Cir. 2007) .............................................................................3

*McDonald v. Equifax Inc.*,
No. 3:15-CV-3212-B, 2017 WL 879224 (N.D. Tex. Mar. 6, 2017)....................................6, 11

*Milton v. Turner*,
445 F. App'x. 159 (11th Cir. 2011) ....................................................................4

*Moran v. The Screening Pros, LLC*,
9th Cir. Cause No. 12-57246 10/4/13, Dkt. 22 ....................................................12

*Matter of Multiponics*,
622 F.2d 709 (5th Cir. 1980) ..............................................................................9

*Ocala Breeders' Sales Co. v. Hialeah, Inc.*,
235 So. 2d 542 (Fla. 2d DCA 1999) ....................................................................9

*Persson v. Equifax Inc.*,
   No. 7:02-CV-511, Doc. 80 (W.D. Va. Oct. 28, 2002) ..............................................7, 11

*Pettway v. Equifax Info. Servs., LLC*,
   No. CIV.A. 08-0618-KD-M, 2010 WL 653708 (S.D. Ala. Feb. 17, 2010) ...........................13

*Ransom v. Equifax Inc.*,
   No. 09-80280-CIV, 2010 WL 1258084 (S.D. Fla. Mar. 30, 2010) ....................................6, 11

*Shuler v. Ingram & Assocs.*,
   441 F. App'x. 712 (11th Cir. 2011) ....................................................................................4

*Sinaltrainal v. Coca-Cola*,
   578 F.3d 1252 (11th Cir. 2009) ..........................................................................................3

*Slice v. Choicedata Consumer Servs., Inc.*,
   No. 3:04-CV-428, 2005 WL 2030690 (E.D. Tenn. Aug. 23, 2005) .................................6, 11

*Steinhardt v. Banks*,
   511 So. 2d 336 (Fla. 4th DCA) (per curiam), *rev. denied* 518 So. 2d 1273 (Fla.
   1987) ...............................................................................................................................9, 10

*Superior Industries, LLC. v. Thor Global Enterprises Ltd.*,
   700 F.3d 1287 (Fed. Cir. 2012) .........................................................................................16

*U–Haul Int'l v. Jartran, Inc.*,
   793 F.2d 1034 (9th Cir. 1986) ...........................................................................................10

*Universal City Studios v. Nissim Corp.*,
   No. 14-81344-CIV-KAM, 2015 WL 1124704 (S.D. Fla. Mar. 12, 2015) ...........................15

*Wagner v. First Horizon Pharm. Corp.*,
   464 F.3d 1273 (11th Cir. 2006) ...........................................................................................4

*Wantz v. Experian Info. Solutions*,
   386 F.3d 829 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co.
   of Am. v. Burr*, 551 U.S. 47 (2007) ...................................................................................13

*Watson v. Riptide Worldwide, Inc.*,
   No. 11 Civ. 0874(PAC), 2013 WL 417372 (S.D.N.Y. Feb. 4, 2013).................................15

*Weiler v. Equifax Inc.*,
   No. 2:99-CV-936, Doc. 29 (W.D. Pa. Nov. 16, 2000) .......................................................7, 11

**Statutes**

Consumer Financial Protection Act of 2010..............................................................................11

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ...................................................... *passim*

15 U.S.C. § 1681a(d) ...................................................................................................4

15 U.S.C. § 1681a(f) ...................................................................................................4

15 U.S.C. § 1681g ............................................................................................... *passim*

15 U.S.C. § 1681n ........................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................3, 4, 14

Fed. R. Civ. P. 12(b)(6) .................................................................................1, 3, 11, 13

Local Rule 7.1(a) .........................................................................................................1

"40 Years of Experience with the Fair Credit Reporting Act – An FTC Staff
    Report with Summary of Interpretations" ("40 Years Commentary")
    (available at https://www.ftc.gov/sites/default/files/documents/reports/40-
    years-experience-fair-credit-reporting-act-ftc-staff-report-summary-
    interpretations/110720fcrareport.pdf) ..................................................................11

Defendants, Equifax Inc., Equifax Information Services LLC ("EIS"), and Trans Union LLC ("Trans Union"), pursuant to Federal Rule of Civil Procedure 12(b)(6), move the Court to dismiss Plaintiff James Scott's First Amended Complaint for Violations of the FCRA ("FAC") with prejudice. Pursuant to Local Rule 7.1(a), Equifax Inc., EIS, and Trans Union submit the following memorandum in support of the motion.

## **INTRODUCTION**

This is a case under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. *Pro se* Plaintiff James Scott filed his Original Complaint for Violations of the FCRA against Experian Information Solutions, Inc., Trans Union, and Equifax, Inc. (Doc. 1). Equifax Inc. filed an Answer. (Doc. 18). Trans Union filed an Amended Motion to Dismiss Plaintiff's Complaint. (Doc. 20). Mr. Scott responded by seeking leave to file his FAC. (Doc. 38). The Court granted Mr. Scott leave to file his FAC, there being no opposition. (Doc. 39). In his FAC, Plaintiff fails to cure the deficiencies present in Plaintiff's original Complaint. (Doc. 1). Plaintiff alleges that Equifax Inc., EIS, and Trans Union violated the FCRA by failing to provide him with a consumer disclosure pursuant to 15 U.S.C. § 1681g; specifically, that the disclosures he received from EIS and from Trans Union did not constitute his "full consumer file disclosure". (FAC, Doc. 37 ¶ 62).

Equifax Inc. moves this Court to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) as it is not a consumer reporting agency; thus, it cannot be liable under the FCRA. EIS is a consumer reporting agency, and it is the party that responded to Mr. Scott's two written requests. Equifax Inc., EIS, and Trans Union also jointly move to dismiss the FAC as Mr. Scott fails to allege facts sufficient to support a claim for relief. He repeats the statutory language and offers merely speculative and conclusory allegations that he received a "credit report" when he requested a "full consumer file disclosure." Mr. Scott's allegations do not adequately state a claim

1

and fail to provide Equifax Inc., EIS, and Trans Union with adequate notice of the basis of the claims asserted against them. Accordingly, Mr. Scott's FAC should be dismissed with prejudice.

**STANDARD OF REVIEW**

Equifax Inc., EIS, and Trans Union move to dismiss based on Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff need not plead "detailed factual allegations," but the complaint must offer "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (first alteration added; internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To meet the *Iqbal/Twombly* plausibility standard, a complaint must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556 (alteration added)). A claim will not survive "if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alteration omitted) (quoting *Twombly*, 550 U.S. at 557).

On a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true. *See Brooks v. Blue Cross Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)). Unsupported allegations and conclusions of law, however, will not benefit from this favorable reading. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework

2

of a complaint, they must be supported by factual allegations."); *see also Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1261 (11th Cir. 2009) ("[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [a] plaintiff's allegations." (alterations added; internal quotation marks omitted) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005))).

While a court is generally limited to the allegations of the complaint in evaluating a Rule 12(b)(6) motion to dismiss, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the [c]ourt may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks*, 116 F.3d at 1369 (alteration added; citation omitted). Where those "exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (internal quotation marks omitted) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); other citation omitted). The court may also consider documents whose "authenticity and veracity are ... unchallenged." *Long v. Slaton*, 508 F.3d 576, 578 n.3 (11th Cir. 2007) (alteration added) (considering investigative report plaintiffs submitted in opposing motion to dismiss).

When a plaintiff alleges fraud or mistake, he must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must allege: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Holguin v. Celebrity Cruises, Inc.*, No. 10-20215-CIV, 2010 WL

1837808, at *2 (S.D. Fla. May 4, 2010) (internal quotation marks omitted) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). The purpose of Rule 9(b)'s particularity requirement is to "alert[ ] defendants to the precise misconduct with which they are charged and protect[ ] defendants against spurious charges of immoral and fraudulent behavior." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citations and internal quotation marks omitted; alterations added). "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006) (holding plaintiffs must plead non-fraud claims with particularity when those claims are based on defendants' fraudulent conduct).

The Eleventh Circuit has held that *"[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Shuler v. Ingram & Assocs.,* 441 F. App'x. 712, 717 n. 3 (11th Cir. 2011) (*quoting Boxer X v. Harris,* 437 F.3d 1107, 1110 (11th Cir. 2006)); *Milton v. Turner,* 445 F. App'x. 159, 161–62 (11th Cir. 2011) (*quoting Alba v. Montford,* 517 F.3d 1249, 1252 (11th Cir. 2008)). However, "the leniency afforded *pro se* litigants does not give courts license to serve as *de facto* counsel or to rewrite an otherwise deficient pleading in order to sustain an action." *Shuler,* 441 F. App'x. at 717 (citation omitted).

## ARGUMENT

### I.   EQUIFAX INC. IS NOT A CONSUMER REPORTING AGENCY AND, THEREFORE, SHOULD BE DISMISSED.

A "consumer reporting agency" or "CRA" is defined by the FCRA, 15 U.S.C. § 1681a(f) as:

> any person which, for monetary fees … regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

4

The term "consumer report" is defined by 15 U.S.C. § 1681a(d) as:

> The term "consumer report" means any written, oral, or other communication of any information by a *consumer reporting agency* bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance … . (Emphasis added.)

Therefore, in order to be held liable under the FCRA, a defendant must be a "consumer reporting agency" that prepared a "consumer report" concerning the plaintiff.

Mr. Scott alleges that Equifax Inc. violated the FCRA's provision regarding consumer disclosures contained at 15 U.S.C. § 1681g. (Doc. 37 ¶ 62). Specifically, Mr. Scott alleges he made two written requests to Equifax Inc. for his "full consumer file disclosure." (*Id.* ¶¶ 22, 28). Both letters are addressed ambiguously to "Equifax" without further appellation. (*Id.* at 16, 21). Mr. Scott further alleges that in response to the first request, he "received a copy of his **credit report** which was not responsive to his request." (*Id.* ¶ 23). In response to his second request, he alleges he "received a copy of his **credit report** which was not responsive to his request." (Id. ¶ 31). If Mr. Scott would have attached a copy of either consumer disclosure he received, it would have revealed that it was provided by EIS, not Equifax Inc. Mr. Scott seeks statutory damages of $1,000, attorney's fees, and costs pursuant to § 1681n of the FCRA. (*Id.* ¶ 62). He does not allege or seek any actual damages. (*Id.*).

Equifax Inc. is not a consumer reporting agency; therefore, federal courts have consistently dismissed Equifax Inc. in FCRA lawsuits filed by consumers based on allegations similar to those made by Mr. Scott here. Federal courts have held that, based on the plain language of the FCRA, plaintiffs cannot maintain FCRA claims against Equifax Inc., and that Equifax Inc. may not be held liable under the FCRA for actions taken by its subsidiaries. *See e.g.*, *Greear v. Equifax, Inc.*,

No. 13-11896, 2014 WL 1378777, at *1 (E.D. Mich. Apr. 8, 2014) (dismissing plaintiff's claims

because "Defendant Equifax, Inc., is not a consumer reporting agency subject to the requirements

of the FCRA. Plaintiff cannot, as a matter of law, state a claim against Equifax, Inc., under the

FCRA."). The District Court for the Eastern District of North Carolina stated as follows:

> ("[P]laintiff has simply sued the wrong party; . . . [Equifax Inc.,] which is
> incorporated and headquartered in Georgia, is a holding company with no source
> of income other than what it obtains from its ownership interests in subsidiaries
> and affiliates. It has not been in the business of assembling or evaluating
> consumer credit information since 1977. Thus, insofar as plaintiff has alleged a
> claim against defendant for violating the FCRA, summary judgment for defendant
> is appropriate where it is not a CRA and not subject to the requirements of the
> FCRA.

*Channing v. Equifax, Inc.*, ., ., No. 5:11-CV-293-FL, 2013 WL 593942, at * 2 (E.D.N.C. Feb. 15,

2013) (citations omitted.)

In *Slice v. Choicedata Consumer Servs., Inc.*, No. 3:04-CV-428, 2005 WL 2030690, at *3

(E.D. Tenn. Aug. 23, 2005), after considering the plain language of the FCRA and the undisputed

Certification of Equifax Inc.'s employee, the court held that Equifax Inc. was not a "consumer

reporting agency." 2005 WL 2030690, *3. The court explained that in order for a plaintiff to state a

claim under the FCRA, a defendant must fall into one of three groups: (1) a consumer reporting

agency; (2) a user of consumer reports; or (3) a furnisher of information to consumer reporting

agencies. *Id*. The court dismissed Equifax Inc. holding that a violation of the provisions of the

FCRA "necessarily must be committed by a "consumer reporting agency." *Id*. The Court also held

that Equifax Inc. did not violate the FCRA because it is not a consumer reporting agency. *Id*.

The *Greear*, *Channing*, and *Slice* decisions are three in an unbroken line of decisions from

district courts dismissing Equifax Inc. under circumstances similar to those presented here. *See*

*McDonald v. Equifax Inc.*, No. 3:15-CV-3212-B, 2017 WL 879224, at *9 (N.D. Tex. Mar. 6,

2017) (dismissing Equifax Inc.)*; Ransom v. Equifax Inc.*, No. 09-80280-CIV, 2010 WL 1258084,

*3 (S.D. Fla. Mar. 30, 2010) (dismissing Equifax Inc. because "[b]ased on this record, the Court concludes, as a matter of law, that Equifax, Inc. has not violated the FCRA because it is not a consumer reporting agency and has not prepared a consumer report for [plaintiff]."); *Frihat v. Citimortgage, Inc.*, No. 07-CV-946, Doc. 60 at 4-5 (W.D. Mo. Dec. 1, 2009) (dismissing Equifax Inc. and citing cases for the proposition that "it [is] not a consumer reporting agency for purposes of the FCRA") (attached hereto as Exhibit 1); *Persson v. Equifax Inc*., No. 7:02-CV-511, Doc. 80 (W.D. Va. Oct. 28, 2002) (same) (attached hereto as Exhibit 2); *Weiler v. Equifax Inc*., No. 2:99-CV-936, Doc. 29 at 2-4 (W.D. Pa. Nov. 16, 2000) (same) (attached hereto as Exhibit 3).

Mr. Scott alleges with no support that Equifax Inc. subsidiaries, such as EIS and Equifax Consumer Services, LLC, but not Equifax Inc., "transfer communications from consumers, as well as consumer information and data based on consumer information and communications." (Doc. 37 ¶ 9). He further alleges that Equifax Inc. and its subsidiaries "regularly share FCRA restricted information with sibling[s]." (*Id.* ¶ 13). Mr. Scott alleges that the Equifax entities have the same branding, labeling, and logo. (*Id.* ¶ 10).

Mr. Scott concedes that Equifax Inc. is a parent holding company of EIS. (*Id.* ¶7). Thus, it appears that Mr. Scott is attempting to assert an argument that the corporate veil should be pierced. (*Id.*). Such an argument should be rejected. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Channing*, 2013 WL 593942, at *3 (quoting *United States v.. Bestfoods,* 524 U.S. 51, 61 (1998) (quotations omitted)).

Florida disregards the corporate entity "in only the most extraordinary cases." *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994.) "Those who seek to

7

pierce the corporate veil ... carry a very heavy burden." *Id.*; *Eagle v. Benefield–Chappell, Inc.,* 476 So. 2d 716 (Fla. 4th DCA 1985). In order to pierce the corporate veil under Florida law, it is the claimant's burden to establish by a preponderance of the evidence that: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation independent existence, was in fact non-existent and the shareholder shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant. *Dania Jai–Alai Palace, Inc. v. Sykes,* 450 So. 2d 1114 (Fla. 1984).

As the Florida Supreme Court recognized, "the corporate veil will not be penetrated either at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them." *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984) (quoting *Advertects, Inc. v. Sawyer Industries, Inc.*, 84 So. 2d 21, 23 (Fla. 1955) ). This heavy showing recognizes that "[e]very corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders." *Id.* Further, "[t]he mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders." *Id.*

In practice, therefore, "there must be persuasive proof of shareholder misconduct before a [c]ourt will pierce the corporate veil." *In re Hillsborough*, 166 B.R. at 469. This is "proof of *deliberate* misuse of the corporate form—tantamount to fraud." *Id.* Such deliberate misconduct can be shown by closely examining the relationship between the shareholder and the corporation— there must be indicators that the corporation was a "mere device or sham *to accomplish* some

ulterior purpose," "*evade* some statute," "*employed* by the stockholders for fraudulent or misleading purposes," "*organized or used* to mislead creditors," or "*evade* existing personal liability." *Id.* (citing *Steinhardt v. Banks*, 511 So. 2d 336 (Fla. 4th DCA) (per curiam), *rev. denied* 518 So. 2d 1273 (Fla. 1987) ); *Ocala Breeders' Sales Co. v. Hialeah, Inc.*, 235 So. 2d 542, 543 (Fla. 2d DCA 1999). Notably, evidence demonstrating an absence of corporate formalities, lack of equity capital, proof of domination and control, and that a corporation was used as vehicle for personal interests is *not* "the correct standard" to pierce the corporate veil. *See Barkett v. Hardy*, 571 So. 2d 13, 14 (Fla. 2d DCA 1990). The key, therefore, is deliberate improper conduct. *See id.*; *In re Hillsborough*, 166 B.R. at 469; *Dania*, 450 So. 2d at 1120; *Bookworld Trade Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1361 (M.D. Fla. 2007). This is required for all claims to pierce the corporate veil, whether they espouse alter-ego or sham corporation theories.[1] *See Dania,* at 1120–21 (collapsing alter-ego theory into piercing the corporate veil doctrine).

The Florida Supreme Court has unequivocally stated that "the corporate veil may not be pierced absent a showing of improper conduct." *Dania*, 450 So. 2d at 1121. It is true that the courts of this state do not hesitate to find such conduct where "the corporation was organized or employed for the purpose to mislead creditors or to work a fraud upon them." *Id.,* at 1120 (quoting *Advertects, Inc., supra; see also Gershuny v. Martin McFall Messenger Anesthesia, P.A.,* 539 So. 2d 1131 (Fla. 1989) ("courts will not look behind [the corporate] entity to hold liable the individuals who compose it absent fraud or some illegal purpose").

---

[1] The distinction between these two theories seems to be one without a difference. Florida courts employ both terms to depict how the corporate veil can be pierced. Indeed, whether the subsidiary is the "mere instrumentality" or "alter ego" of the parent company, or the subsidiary was formed as "sham corporation" all drives at the same question and analysis. *See, e.g., Dania,* 450 So. 2d at 1118–21; *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1320 (11th Cir. 1998) (describing corporate veil analysis); *Matter of Multiponics,* 622 F.2d 709, 724–25 (5th Cir. 1980) (defining alter ego doctrine relationship); *17315 Collins Ave., LLC v. Fortune Dev. Sales Corp.*, 34 So. 3d 166, 168 (Fla. 2d DCA 2010).

Florida cases after *Dania* looked to shareholders' subjective motivation, and not to the effect of their actions. In *Steinhardt v. Banks,* 511 So. 2d 336 (Fla. 4th DCA) (per curiam), *rev. denied* 518 So. 2d 1273 (Fla. 1987), the Florida District Court of Appeal offered a "workable formula for applying the [*Dania*] reference to 'improper conduct'." The court stated:

> Florida decisions uniformly hold that courts will look through the screen of corporate entity to the individuals who compose it in cases in which the corporation was a mere device or sham *to accomplish* some ulterior purpose, ... or where *the purpose is to evade* some statute or *to accomplish* some fraud or illegal purpose, or where the corporation *was employed* by the stockholders for fraudulent or misleading purposes, *was organized or used* to mislead creditors or to *perpetrate* a fraud upon them, or *to evade* existing personal liability. (emphasis added).

*Id.* (citing *Tiernan v. Sheldon,* 191 So. 2d 87 (Fla. 4th DCA 1966), *cert. discharged,* 200 So. 2d 183 (Fla. 1967)). Thus it is that the improper conduct must be deliberate misconduct. *See also Barkett,* 571 So. 2d at 13 (absence of corporate formalities, lack of equity capital, proof of domination and control, and that corporation was used as a vehicle for personal interest were insufficient to establish improper conduct); *Futch v. Head,* 511 So. 2d 314 (Fla. 1st DCA) (veil pierced where shareholder employed corporation to cheat co-broker out of a sales commission), *rev. denied,* 518 So. 2d 1275 (Fla. 1987); *U–Haul Int'l v. Jartran, Inc.,* 793 F.2d 1034 (9th Cir. 1986) (interpreting *Dania* to require actual fraud as a prerequisite to alter ego liability for trademark infringement).

Mr. Scott's conclusory allegations are insufficient to sufficiently plead his alter ego claim as compared to the list of factors considered under Florida law. Plaintiff cannot save his claims against Equifax Inc. by creating a theory having no basis in reality. Mr. Scott's allegations are not well-pled and therefore, should not be afforded any weight. Accordingly, the Court should dismiss Mr. Scott's claims against Equifax Inc.

10

Dismissal is warranted here just as it was in *Greear*, *Channing*, *Slice*, *Ransom*, *McDonald*, *Frihat*, *Persson*, and *Weiler*. The issues are virtually identical. Equifax Inc. is not a consumer reporting agency and, therefore, is not subject to the FCRA and cannot be held liable under the FCRA. There is no reason for this Court to deviate from this strong and unbroken line of authority.

## II.   MR. SCOTT'S FAC FAILS TO PLEAD FACTS SUFFICIENT TO SUPPORT A CLAIM FOR RELIEF PURSUANT TO § 1681g.

Mr. Scott's FAC is also subject to dismissal under Rule 12(b)(6) against Equifax Inc., EIS, and Trans Union because it fails to state facts sufficient to support a claim for relief under the FCRA. Mr. Scott alleges that Equifax and Trans Union "repeatedly failed to comply with Plaintiff's multiple requests for a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(1)." (*See* Doc. 37 ¶¶ 58, 62). Section 1681g(a)(1) of the FCRA states that, upon request, a consumer reporting agency shall disclose "[a]ll information in the consumer's file at the time of the request, except that – (A) if the consumer . . . requests that that the first five digits of the social security number [be truncated, the consumer reporting agency shall do so], and (B) nothing in this paragraph shall be construed to require a consumer reporting agency to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer." 15 U.S.C. § 1681g(a)(1). To prevail on a claim based on § 1681g(a)(1), then, a plaintiff must adequately plead that the consumer reporting agency failed to provide the consumer with the consumer file. Here, Mr. Scott merely recites in conclusory fashion that he did not receive a full consumer file disclosure at the same time admitting Equifax[2] and Trans Union timely responded and produced a "credit report." (*See* Doc. 37 ¶¶ 23, 25, 31, 32). Mr. Scott's averments are insufficient.

---

[2] As set forth in Argument section I, Equifax Inc. is not a CRA. EIS is the CRA that responded to Plaintiff's requests for copies of his consumer disclosures.

A.    "Consumer File" Is Defined As The Information Contained In A Consumer's Credit Report/Disclosure.

The Federal Trade Commission ("FTC")[3] interpreted the term "file" in 1681g to be limited to material included in a consumer report that would be sent to a third party. See 40 Years Commentary, p. 71. "[A]ncillary records" such as "a CRA's audit trail of changes it makes in the consumer's file, billing records, or the contents of a consumer relations folder, are not included in the term 'information in the consumer's file.'" Id. The Seventh Circuit in *Gillespie v. Trans Union Corp.* held that "file" meant information contained in a consumer report produced by the CRA. *See* 482 F.3d 907, 908-10 (7th Cir. 2007). *Gillespie* cites the FTC's commentary on §1681g(a)(1) regarding the limited scope of the term "file": "[t]he term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Id.* at 909 (quoting 16 C.F.R. pt. 600, app. § 603). "Congress, it seems, chose to limit the right to contest information to material *actually contained in consumer reports*. And of course it was free to draw the line as it did." *Gillespie*, 482 F.3d at 910 (emphasis added). In *Gillespie*, the plaintiff argued that the phrase "information … that might be furnished, or has been furnished," would include the date of delinquency or purge date which was excluded from the consumer disclosure, because the defendant might supply that information in the future. *Id.* at 909. However, the Court was not persuaded by this argument,

_____

[3] The interpretation and enforcement of the FCRA transferred from the FTC to Consumer Financial Protection Bureau ("CFPB") after passage of the Consumer Financial Protection Act of 2010. In preparation for the transition, in July 2011, the FTC published "40 Years of Experience with the Fair Credit Reporting Act – An FTC Staff Report with Summary of Interpretations" ("40 Years Commentary") (available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf). The CFPB has not issued any contrary interpretation and has cited the 40 Years Commentary in amicus briefs on other topics. *See Moran v. The Screening Pros, LLC*, No. 12-57246, Doc. 22 (9th Cir. Oct. 4, 2013).

instead finding that a more reasonable interpretation "would require some showing—aside from the existence of the purge date in its file—that Trans Union included similar information in a consumer report in the past or that it plans to do so in the future." *Id.* Thus, *Gillespie* held that "file" means information contained in the consumer report, "not their entire files in whatever form maintained by the CRA." *Id.* at 909.

Mr. Scott alleges "Defendants have far more information relating to Plaintiff in their files and databases including archived information." (Doc. 37 ¶ 41). Unlike the plaintiff in *Gillespie*, Mr. Scott does not even offer any factual enhancements to support such a speculative conclusory statement. Nonetheless, to the extent such archived information exists, it is not part of the file to be produced under §1681g as interpreted by the FTC and courts.

**B.      Plaintiff Admits He Received A Copy Of His Credit Report/Disclosure From Equifax and Trans Union**

A "consumer report" is different from a consumer disclosure or credit file. *See Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007); *Pettway v. Equifax Info. Servs., LLC*, No. CIV.A. 08-0618-KD-M, 2010 WL 653708, at *7 (S.D. Ala. Feb. 17, 2010). "Consumer reports" are generated by a CRA and delivered to a third party for use in deciding whether the consumer is eligible for credit or for other purposes. *Pettway*, at *7 (citing 15§ 1681a(d)). In contrast, a "consumer disclosure" or "consumer file" is a CRA's file that is provided to the consumer, not to third parties, that contains information about the consumer recorded and retained by the CRA. *Id.* (citations omitted). In other words, there cannot be a consumer report without delivery to a third party.

Mr. Scott's sole allegations against Equifax Inc., EIS, and Trans Union is that he did not receive his "full consumer file disclosure" as requested. (*See* Doc. 37 ¶¶ 22-25, 28 - 32). Mr. Scott states that he sent "Equifax" two requests for his full consumer file disclosure, and in response to

each request he received a copy of his "credit report." (*Id.* at ¶¶ 23, 31). Plaintiff alleges the same against Trans Union.  (*Id.* at ¶¶ 25, 32). He does not dispute that he received these documents upon his request, as required by § 1681g. As defined by case law discussed above, a credit report goes to a third party. Because Mr. Scott, the consumer, was the recipient, what he received was exactly what he requested – a full consumer file disclosure.

Thus, by Mr. Scott's own admission, Equifax Inc., EIS, and Trans Union complied with § 1681g(a)(1) and relevant federal case precedent by providing his consumer disclosure to him. Accordingly, Mr. Scott has failed to allege sufficient facts to support a cause of action against Equifax Inc., EIS, or Trans Union under the FCRA, and the Court should grant judgment on the pleadings and dismiss his claim under Rule 12(b)(6).

### C.   Mr. Scott Provides No Factual Basis For His Assertion That The "Credit Report" He Received Was Not His "Full Consumer File Disclosure."

Notably absent from Mr. Scott's FAC is any factual enhancement that specific information that should have been in the disclosure was missing. Instead, he offers speculative conclusions with no factual basis that information has been excluded from his consumer file. He acknowledges the speculative nature of his statements by stating that "one can only surmise." (*See* Doc. 37 ¶ 47). He assumes that such information includes the following categories:

- "information that was previously shown in his credit reports and additional information that is provided to prospective creditors, insurers or employers who request information on Plaintiff that Plaintiff has never seen or is aware of." (*id.* ¶ 38);

- "negative codes among other things that are provided to prospective creditors, insurers or employers" (*id.* ¶ 39); and

- "far more information relating to Plaintiff in their files and databases including archived information." (*id.* ¶ 41).

Specifically, he alleges "[u]pon information and belief" that these types of information are missing from his disclosure. (*Id.* ¶¶ 38, 39, and 41).

Generally, allegations of fraud based on information and belief do not satisfy Rule 9(b)'s heightened standard of pleading. *Hekker v. Ideon Grp., Inc.,* No. 95–681–Civ–J–16, 1996 WL 578335, at \*4 (M.D. Fla. Aug. 19, 1996) (citing *Leisure Founders, Inc. v. CUC Int'l, Inc.,* 833 F. Supp. 1562, 1574 (S.D. Fla. 1993)). "However, where the subject matter of the fraud is uniquely within the adverse party's knowledge or control, allegations of fraud based upon information and belief may be acceptable." *Id.* (citing *Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628, 645 (3d Cir. 1989)); *see also, Hill v. Morehouse Med. Assocs., Inc.,* No. 02–14429, 2003 WL 22019936, at \*3 (11th Cir. Aug. 15, 2003). In such circumstances, allegations made upon information and belief " 'must be accompanied by a statement of the facts on which the belief is founded.' " *Watson v. Riptide Worldwide, Inc.,* No. 11 Civ. 0874(PAC), 2013 WL 417372, at \*4 (S.D.N.Y. Feb. 4, 2013) (quoting *Cargo Partner AG v. Albatrans Inc.,* 207 F. Supp. 2d 86, 116 (S.D.N.Y. 2002), *aff'd,* 352 F.3d 41 (2d Cir. 2003)); *see also, Universal City Studios v. Nissim Corp.*, No. 14-81344-CIV-KAM, 2015 WL 1124704, at \*4 (S.D. Fla. Mar. 12, 2015); *Iqbal,* 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Kindred Hospitals East, LLC v. Fox–Everett, Inc.,* No. 3:12–cv–307–J–37MCR, 2012 WL 5467516, at \*4 (M.D. Fla. Oct. 4, 2012). In addition, pleading based on "information and belief" is appropriate only when the complaint adduces specific facts supporting a strong inference of fraud. *United States ex rel. Jallali v. Nova Se. Univ., Inc.*, No. 11-60342-CIV, 2011 WL 13175105, at \*4 (S.D. Fla. Aug. 12, 2011) (quoting *Great Florida Bank v. Countrywide Home Loans, Inc.*, No. 10-22124-CIV, 2011 WL 382588, at \*5 (S.D. Fla. Feb. 3, 2011). Therefore, bald or otherwise conclusory allegations will not suffice. *Id.* The complaint must set forth supporting facts on which the belief is founded. *Id.*

15

Here, the FAC contains mere conclusory statements and provides no factual basis for the assertion that any specific information has been withheld from the document he admits receiving. Mr. Scott's FAC should be dismissed because he has alleged no facts sufficient to support any recognizable cause of action under § 1681g. These barebones allegations do not provide the Court with an adequate basis to draw an inference of plausible culpability. *See Superior Industries, LLC. v. Thor Global Enterprises Ltd.,* 700 F.3d 1287, 1296 (Fed. Cir. 2012) (affirming dismissal of inducement claim that failed to allege "any facts to support a reasonable inference that [the alleged infringer] specifically intended to induce infringement ... or that it knew it had induced acts that constituted infringement"); *Brandywine Communications Techs., LLC v. Casio Computer Co. Ltd.,* 912 F. Supp. 2d 1338, 1347 (M.D. Fla. 2012) (dismissing inducement and contributory infringement claims where patentee has not alleged either knowledge of patents-in-suit before litigation or facts plausibly showing the alleged infringer intended their customers to infringe the patents and knew their customers' acts constituted infringement). Accordingly, Mr. Scott's FAC should be dismissed.

## <u>CONCLUSION</u>

For the reasons above, Defendants request that their motion be granted.

16

Dated: May 3, 2018                      Respectfully submitted,

                                        /s/ *J. Anthony Love*
                                        J. Anthony Love
                                        FL Bar No. 67224
                                        King & Spalding LLP
                                        1180 Peachtree Street, N.E.
                                        Atlanta, Georgia 30309
                                        Tel: (404) 572-4600
                                        Fax: (404) 572-5100
                                        tlove@kslaw.com
                                        *Attorney for Defendant Equifax Inc. and*
                                        *Equifax Information Services LLC*

                                        /s/ *Franklin G. Cosmen*
                                        Franklin G. Cosmen
                                        Florida Bar No. 0089214
                                        QUINTAIROS, PRIETO, WOOD &
                                        BOYER P.A.
                                        9300 S. Dadeland Blvd, 4th Floor
                                        Miami, Florida 33156
                                        Telephone: (305) 670-1101
                                        Facsimile: (305) 670-1161
                                        fcosmen@qpwblaw.com
                                        *Attorney for Defendant Trans Union LLC*

17

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this 3rd day of May, 2018 served a true and correct copy of

the foregoing via U.S. Mail and email to the following counsel of record:

James W. Scott
3457 Deercreek Palladian Circle
Deerfield Beach, FL 33442
Email: jwsscott777@gmail.com
***Pro Se Plaintiff***

Erika Stephanie Handelson
Jones Day
600 Brickell Avenue
Suite 3300
Miami, FL 33131
Email: ehandelson@jonesday.com
***Counsel for Experian Information Solutions Inc.***

Franklin Gordon Cosmen , Jr.
Quintairos Prieto Wood & Boyer P.A.
9300 S. Dadeland Blvd
4th Floor
Miami, FL 33156
Email: fcosmen@qpwblaw.com
***Counsel for Trans Union LLC***

*/s/ J. Anthony Love*
J. Anthony Love