

FILED BY _____ D.C.

MAY 15 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**JAMES W SCOTT**                    **CASE: 18-CV-60178-ALTONAGA/SELTZER**

*Plaintiff.*

**vs**

**EXPERIAN INFORMATION
SOLUTIONS, INC.; TRANS UNION
LLC; EQUIFAX, INC.; EQUIFAX
INFORMATION SERVICES, LLC**
*Defendants*

## PLAINTIFF'S RESPONSE IN OPPOSITION AND MEMORANDUM TO DEFENDANTS EQUIFAX INC., EQUIFAX INFORMATION SERVICES LLC, AND TRANS UNION LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, James W Scott, who hereby submits his Response in

Opposition to Defendant's Motion to Dismiss and states as follows:

### BACKGROUND

Plaintiff filed his Original Complaint against Experian Information Solutions, Inc

(Experian), Trans Union, LLC (Trans Union) and Equifax, Inc. (Equifax). The Complaint

alleged violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681g(a)(1). Experian

and Equifax answered the Complaint while Trans Union filed a Motion to Dismiss. Plaintiff

then filed a Motion for Leave to file an Amended Complaint alleging the same violations against

the Defendants with the inclusion of another Defendant. This new Defendant added was Equifax

Information Services, LLC (EIS). Equifax, Inc., Equifax Information Services, LLC and Trans

Union, LLC (Collectively "Defendants") have filed a combined Motion to Dismiss Plaintiff's

First Amended Complaint based on two main arguments. First, that Equifax, Inc. is not a

Consumer Reporting Agency as defined by the FCRA and second, that the Plaintiff has failed

to plead facts sufficient to support a claim for relief pursuant to § 1681g as to all Defendants.

The matter before the Court is simple. The Plaintiff made two very detailed and specific requests for his **full consumer file disclosure** under 15 U.S.C. § 1681g in an effort to obtain and review ALL information that Defendants had in their files relating to him as a consumer. *See Exhibits 1&2 from Amended Complaint.* The FCRA requires, among other obligations, that CRAs "clearly and accurately disclose" to a requesting consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The Plaintiff did not ask for a credit report, a credit score, risk score, predictors or other things relating to the processes and procedures of how Defendants created reports, maintains, analyzes or disseminates information relating to him or its customers. James W Scott simply requested a **full consumer file disclosure** of what Defendants were in possession of in any form or in any place that relates specifically to him as a consumer. *See Exhibits 1 & 2 from Amended Complaint.* It was a very unambiguous and straightforward request made under the law. In response to Plaintiff's multiple requests, Defendants provided nothing more than a credit report twice with the first page greeting: "Enclosed is the Trans Union **Personal Credit Report that you requested**." Plaintiff did not request a credit report but instead made a request for his **full consumer file disclosure** of all information contained in his Trans Union files and that is not what he received after multiple requests. Equifax's first page greeting said "Thank you for requesting your credit file, commonly called a Consumer Credit Report." (See Exhibits 1 and 2) As a result, Plaintiff filed this instant case.

## STANDARD OF REVIEW

Courts view Rule 12(b)(6) motions with disfavor. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("We hasten to add that [a 12(b)(6) motion] is

viewed with disfavor and rarely granted."). A complaint should be upheld if it is "supported by [a] showing [of] any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007). When considering a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff. Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008). Additionally, when considering a motion to dismiss the court should consider the plaintiff's allegations as true. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). less stringent standards than formal pleadings drafted by lawyers, and in cases in which a pro se plaintiff is faced with motion to dismiss, it is appropriate for court to consider materials outside of complaint to the extent they are consistent with allegations in complaint. *Donhauser v. Goord*, N.D.N.Y.2004, 314 F. Supp.2d 119. Federal Civil Procedure 1832

## ARGUMENT AND AUTHORITIES

### 1. EQUIFAX INC. IS NOT A CONSUMER REPORTING AGENCY AND, THEREFORE, SHOULD BE DISMISSED.

Equifax begins this argument with the definition by the FCRA of what constitutes a "CRA" or "consumer reporting agency" and "consumer report." According to the definition[1], Equifax states that since they did not prepare a consumer report that they are not a CRA. Well what exactly would an unsophisticated consumer think their business to be in other than that of a CRA. Congress clearly recognizes Equifax, Inc. as a consumer reporting agency as evidenced by the letter from Congress to them attached as an exhibit to Plaintiff's Amended Complaint. [Doc. 37]. 15 U.S.C. § 1681x and 12 CFR 1022.140 clearly articulate that a consumer reporting agency may not structure itself in a certain manner to avoid liability as a consumer reporting agency. As, "one of the big three" CRAs, along with Trans Union and Experian, Equifax, Inc.

---

[1] Any person which, for monetary fees…regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. 15.U.S.C.§1681a(f)

does not state anywhere except in litigation that one of its subsidiaries or divisions is the CRA but they are not.

In no way does Equifax, Inc. point out specifically on its website or webpages that Equifax Information Services, LLC is the consumer reporting agency and that is where a person would need to go to obtain information from them such as a credit report or full file disclosure. Each webpage indicates only the name "Equifax" and the Equifax logo at the top of the page while the copyright notice at the bottom of every page states "Copyright Equifax, Inc. 2018."[2] When referring to any of its products on its webpages such as credit reports, it refers to "your Equifax credit report" instead of your Equifax Information Services, LLC credit report. There is no reference whatsoever to Equifax Information Services, LLC as being the provider of an "Equifax credit report." Which of course, is not what the Plaintiff had asked for in the first place. Equifax, Inc. is very consistent in its use of only the word "Equifax" in all of its communications both on the web and in correspondence with consumers. How can anyone not believe that Equifax, Inc. is the company providing the information that anyone, including the least sophisticated consumer, would seek or receive through various consumer reports and not just credit reports?

Which companies under the "Equifax" logo are using what information, how it is being used and accessed, is the major question here to determine whether Equifax, Inc. is in fact a CRA as alleged by Plaintiff. Discovery is a necessary component to bring to light how Equifax, Inc. does in fact operate as a CRA. Equifax, Inc. has concerted its efforts to structure itself through various divisions and/or subsidiaries such as Equifax Information Services, LLC and to allow the various subsidiaries to access the same information to avoid liability which is strictly prohibited under 15 U.S.C. § 1681x and 12 CFR 1022.140.

---

[2] https://www.equifax.com/personal/ (last visited May 12, 2018)

Equifax provides case law to support its motion to dismiss that Equifax, Inc. is not a CRA such as *Greear v. Equifax, Inc., Channing v. Equifax, Inc., Slice v. Choicedata Consumer Servs., Inc., Persson v. Equifax, Inc. Weiler v. Equifax, Inc., McDonald v. Equifax, Inc., Ransom v. Equifax, Inc. and Frihat v. Citimortgage, Inc.* A cursory review of these cases all revealed that those decisions were all rendered at the summary judgment stage.[3] District Judge Lauck stated "However, every decision cited by Equifax, Inc. was rendered at the summary judgment stage… Further, in each of the cases cited above, the plaintiff either proceeded *pro se* or failed to oppose the motion. Such rulings cannot provide persuasive support for the Defendant's position at the Motion to Dismiss stage." in the court's Memorandum Opinion denying Equifax, Inc's motion to dismiss. *Jones v. Equifax, Inc.* **U.S. District Court for the Eastern District of Virginia 3:14-cv-00678 (Aug 27, 2015) Doc. 54 fn11.** As stated before, Discovery is necessary to bring to light the facts needed to show that Equifax, Inc. is a CRA. In addition, even Equifax, Inc.'s representing Law Firm recognizes their CRA status in a letter sent from King & Spalding on behalf of Equifax, Inc.. to the State Attorneys General of all states regarding the date breach in 2017. The letter refers to **Equifax, Inc.'s not Equifax Information Services, LLC'**s breach of its database. (See Exhibit 3). There is no mention of another company's database being hacked or that another company other than Equifax, Inc. owns and maintains it.

Equifax, Inc. argues as well that Plaintiff is asserting an argument that the corporate veil should be pierced. This is a baseless argument. Plaintiff states in his Amended Complaint that Equifax, Inc. is a **parent** company to EIS and others which **operate** in an alter ego capacity. The fact that Equifax, Inc. is a CRA is established by determining how the data in Equifax, Inc.'s

---

[3] Efx. Defendants attach three exhibits to their filing [Doc. 46] to support their motion however all three are not persuasive; in *Frihat v. Citimortgage, Inc.*(Ex. 1) the plaintiff failed to prosecute or counter Defendant's arguments; in *Person v. Equifax, Inc.*(Ex.2) the plaintiff failed to counter Defendants arguments or to amend the complaint; in *Weiler v. Equifax, Inc.*(Ex. 3) the plaintiff failed to dispute Defendant's evidence at all.

databases regarding Plaintiff is used, accessed, and by whom. The FCRA is very clear on those points. The Defendant's argument of the corporate veil being pierced lacks true merit.

Plaintiff's FAC plausibly alleges that Equifax, Inc. and its subsidiary EIS **operate** as a single unified consumer reporting agency. [Doc. 37 ¶¶ 8, 9, 10, 11, 13, 31] Defendants **operate** as a single FCRA governed "consumer reporting agency." Equifax, Inc. has structured itself in order to warehouse its sale of credit-reporting consumer reports in one entity and its sale of employment, payroll, and income-records in a second entity. Defendants together maintain a collective set of databases that – for Defendant's day to day use are treated as an integrated pool of information on consumers. One of those databases is directly operated by Equifax, Inc.- the WorkNumber[4] as one example- while others are operated by EIS. "The WorkNumber" data is very clearly used for FCRA purposes and is of the nature of FCRA protected data as is consumer credit related data contained in the databases operated by EIS.

Defendants have improperly alleged that the credit file that Plaintiff received was sent from EIS when that is not the case at all. Mr. Scott specifically sent his requests to Equifax not EIS. [Doc. 37, Ex. 1,2] If Equifax was not the proper party, why then, did they not indicate to Mr. Scott that he needed to send his requests to EIS. Mr. Scott only received a "credit file" from Equifax in response to his requests and no other party. (See Exhibit 2) The only reference to EIS was if he should want to make a dispute of information contained in the report he had received.

Equifax itself states in its 2016 10K filing: "Equifax Inc." is organized and reports its business results in four operating segments.[5] An "operating segment" is by definition a component and part of a single corporate entity:

---

[4] http://www.theworknumber.com/Employees/FCRA/index.asp (last visited May 13, 2018)

[5] https://www.sec.gov/Archives/edgar/data/33185/000003318517000008/efx10k20161231.htm (last visited May 13, 2018)

**Identification of operating segments**
IFRS 8 defines an operating segment as a component of an entity:
- that engages in revenue earning business activities
- whose operating results are regularly reviewed by the chief operating decision maker. The term 'chief operating decision maker' is not as such defined in IFRS8 as it refers to a function rather than a title. In some entities the function could be fulfilled by a group of directors rather than an individual and
- for which discrete financial information is available.

http://www.accaglobal.com/gb/en/member/discover/cpd-articles/corporate-reporting/ifrs8-

operating.html , (last visited May 13, 2018).[6] S.E.C. financial statement standards are similar:

> Under the new accounting standard, an operating segment is a component of a business, for which separate financial information is available, that management regularly evaluates in deciding how to allocate resources and assess performance. Specifically, SFAS No. 131 states that an operating segment is a component of a business:
> - that engages in activities from which it may earn revenues and incur expenses (including revenues and expenses relating to transactions with other components of the same business);
> - whose operating results are regularly reviewed by the enterprise's "chief operating decision maker" to make decisions about resources to be allocated to the segment and assess its performance; and
> - for which discrete financial information is available.

It is not common ownership that matters, but common use of a FCRA governed database

that determines whether Equifax, Inc. and EIS **operate** as a consumer reporting agency.[7]

There is a question of fact to be determined through fact evidence rather than being a

matter of law as Equifax, Inc. argues.

Defendants continue their argument with supporting case law such as *Hillsborough*

*Holdings Corp.,* 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994), *Eagle v. Benefield-Chappell, Inc,*

*Dania Jai-Alai Palace v. Sykes, Advertects, Inc. v. Sawyer Industries, Inc., Steinhardt v. Banks,*

*Ocala Breeders' Sales Co. v. Hialeah, Inc, Bookworld Trade Inc. v. Daughters of St. Paul, Inc.,*

*Gershuny v. Martin Mcfall Messenger Anesthesia, Tiernan v. Sheldon, Futch v. Head, and U-*

*Haul Int'l v. Jartran, Inc.* All these cases were involving fraud and nowhere in Plaintiff's FAC

is fraud even hinted at. Plaintiff only stated that Equifax, Inc. is a parent company to EIS and

---

[6] ACCA (the Association of Chartered Certified Accountants) is the global body for professional accountants.

[7] S.E.C. Segment Reporting Final Rules, http://www.sec.gov/rules/final/33-7620.txt (last visit May 13, 2018)

others which **operate** in an ***alter ego*** capacity. Plaintiff's FAC only needs to satisfy the F.R.C.P. 8(a)(2) which is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" and not the heightened pleading standards of F.R.C.P. Rule 9(b) which is entirely for issues of fraud. A veil-piercing mindset such as corporation A is not responsible for the debts of corporation B is not relevant for the question of whether the Defendants **operate** together as a CRA.

This case is brought under a federal statute – the FCRA, 15 U.S.C. § 1681, et seq. Determination as to whether to ignore the corporate veil in determining substantive liability of a party under a federal statute is governed by federal, rather than state law as the "doctrine of piercing the corporate veil is not a mere procedural rule or mere judgment enforcement mechanism, but substantively determines who is liable" under the federal statute. *Thomas v. Peacock,* 39 F.3d 493, 500-502 (4th Cir. 1994) (Applying this principal to an ERISA action). The standard adopted by the Fourth Circuit,[8] and later enunciated by the First Circuit, *Thomas* was what it described as the "liberal veil piercing standard." *Thomas,* 39 F.3d 503-304 citing *Alman v. Danin,* 801 F.2d 1, 3-4 (1st Cir. 1986) and *Town of Brookline v. Gorsuch,* 667 F.2d 215, 221 (1st Cir. 1981).

Plaintiff's First Amended Complaint in fact provides greater detail and specificity than has been held necessary under *Twombly/Iqbal* in pleading alter ego/veil piercing. In fact, in *The Flexible Benefits Council v. Feltman,* 1:08cv371, 2008 WL 2465457,[*]7 (E.D. Va. 2008), Judge Cacheris rejected a corporate veil Rule 12(b)(6) argument against a Complaint that principally alleged, "Upon information and belief, all of the above actions were performed in

---

[8] The general rule adopted in the federal cases is that "a corporate entity may be disregarded in the interests of public convenience, fairness and equity," [citing *Capital Telephone Co. v. FCC,* 498 F.2d 734, 738 (D.C. Cir. 1974)]. In applying this rule, federal courts will look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form [citations omitted], an inquiry that usually gives respect to the corporate form than does the strict common law alter ego doctrine….(Emphasis added).

concert with Defendants Feltman and ECFC, Ltd., as well as with other associates currently unknown to plaintiff." *Feltman* Complaint, ¶ 50. Similar conclusions were reached in cases with varying degrees of pleading detail. *See e.g. Osgood v. Midwest Parking Solutions,* 2009 WL 4825192 (E.D. Mo. Dec. 11, 2009) (finding plaintiff's allegations of the individual's control and dominance of the corporate entity sufficient to survive a motion to dismiss); *Maganallez v. Hilltop Lending Corp.,* 505 F. Supp. 2d 594 (N.D. Cal. 2007) (denying motion to dismiss alter ego claim against individual who controlled corporate defendant). Indeed, in *Maganallez,* the court noted that an allegation "that one of the major shareholders has 'essentially full operational control' over [the defendant] during a specific period was sufficient to justify allowing plaintiffs to proceed on an alter ego theory." *Id.* at 608 (citing In re Napster, Inc, Copyright Litig., 354 F. Supp. 2d 1113, 1122 (N.D. Cal. 2005)).[9]

In this instant case, Plaintiff alleges in his FAC that both Defendants operate as a "CRA" and are therefore subject to the FCRA. According to the Defendants, the FAC should be dismissed because they claim to have manufactured a corporate structure that separates Equifax's data between multiple controlled entities. This is an "evasion of legal obligations" imposed by the FCRA through "creative" corporate structuring and is prohibited by FCRA regulations. The Federal Trade Commission, at the time responsible for enforcement of the FCRA, promulgated regulations almost exactly on point to the Efx. Defendants. *See* 16 C.F.R. Part 611 titled "Prohibition Against Circumventing Treatment as a Nationwide Consumer Reporting Agency" and in relevant part states:

---

[9] *See also Oregon Laborers-Employers Health & Welfare Trust Fund v. All State Industrial Marine Cleaning, Inc.,* 850 F. Supp. 905 (D. Or. 1994), *CitiMortgage, Inc. v. NL, Inc.,* 2010 WL 1610411 (E.D. Mo. April 21, 2010); *McWilliams Ballard, Inc. v. Level 2 Development,* ---F.Supp.2d---, 2010 WL 1068917 (D.D.C. March 24, 2010) (Applying Virginia common law); *Trabucco v. Intesa Sanpaolo, S.P.A.,* F.Supp. 2d. 2010 WL 991621,*7-8 (S.D.N.Y. March 19, 2010).

> (a)A consumer reporting agency shall not circumvent or evade treatment as a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis' as defined under section 603(p) of the Fair Credit Reporting Act, 15 U.S.C. §1681a(p), by any means, including, but not limited to: (1)Corporate organization, reorganization, structure, or restructuring, including merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency[.]

16 C.F.R. Part 611.2. [10] One very good example of the FTC's prohibited activities in which

Equifax is a sure fit include: "(1) *Circumvention through reorganization by data type*." In this

illustration of a corporate structuring example that would not be recognized as a bar to FCRA

governance, the FTC proposed the following:

> XYZ Inc. is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It restructures its operations so that public record information is assembled and maintained only by its corporate affiliate, ABC Inc. XYZ continues operating as a consumer reporting agency but ceases to comply with the FCRA obligations of a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, asserting that it no longer meets the definition found in FCRA section 603 (p), because it no longer maintains public record information. XYZ's conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section. [...]

*Id.* Similarly, for another of the three illustrated prohibited examples, the FTC offered:

> (3) *Circumvention by a newly formed entity*. [...] . Smith Co. organizes itself into two affiliated companies: Smith Credit Co. and Smith Public Records Co. Smith Credit Co. assembles and maintains credit account information from persons who furnish that information regularly and in the ordinary course of business on consumers residing nationwide. Smith Public Records Co. assembles and maintains public record information on consumers nationwide [.]

In applying the federal standard adopted in *Thomas,* this Court cannot reasonably conclude that

the FCRA's purpose "places importance on the corporate form." To the contrary, the FCRA

expressly cautions that corporate form is irrelevant and that the use of corporate associations and

structures to avoid its applications are prohibited.

     The Equifax Defendant's argument also fails for another reason. They are each obligated

to provide the full file on each consumer. And the "file" consists not only of information stored

in the database at that defendant's facility, but all information that could be included in a

consumer report it may sell. The Third Circuit heard and rejected the same argument made by

---

[10] https://www.gpo.gov/fdsys/granule/CFR-2010-title16-vol1/CFR-2010-title16-vol1-sec611-2 (last visited May 13, 2018)

Trans Union under weaker circumstances—where the separate data that "could be" accessed by Trans Union was maintained in a database operated by an unrelated third party. The Court of Appeals rejected that argument. *See Cortez v. Trans Union, LLC,* 617 F.3d. 688, 711-12 (3d Cir. 2010) (emphasis added). Thus, when Plaintiff requested his disclosure from Equifax, even **IF** it was provided by EIS it was obligated to provide the full file—to include not only its own credit data, but also the other data it regularly sells. Either way, at this stage, Plaintiff has more than alleged a plausible claim.

## II.   MR. SCOTT'S FAC FAILS TO PLEAD FACTS SUFFICIENT TO SUPPORT A CLAIM FOR RELIEF PURSUANT TO § 1681g.

Plaintiff made two very specific requests for his full consumer file disclosure pursuant to 15 U.S.C. § 1681g to be sure that there would be no misunderstanding as to exactly what it was he was requesting, anticipating that the Defendants may respond by sending just his conventional credit report in response to his request. *See Exhibits 1 & 2 from Amended Complaint.* When he received the first response which was exactly as anticipated (a conventional credit report) he made a second and final very detailed request to be sure that the Defendants knew without any doubt what he was requesting and entitled to under the statute.[11] *See Exhibits 1 & 2 from Amended Complaint.*

Once again, the Defendants responded with nothing more than a conventional credit report which was not responsive to his request for his full consumer file disclosure. Plaintiff made no request for any credit score, or other risk scores or predictors and made no requests for any information relating to any processes or procedures of the Defendants. Plaintiff's FAC pleads in detail precisely what he was asking for, what the Defendants failed to do to comply with his request and his Amended Complaint is supported by exhibits.

---

[11] As set forth herein, the term "Defendants" collectively refer to Equifax, Inc., Equifax Information Services, LLC and Trans Union, LLC

The Defendants argue that Mr. Scott recites in a "conclusory fashion" that he did not receive a full file disclosure. Mr. Scott simply made a statement of fact about not receiving a **full consumer file disclosure** not a conclusory statement as the Defendants allege. Mr. Scott clearly states his request was for a **full consumer file disclosure** and he only received a credit file which is but one small paragraph of the novel to which he was entitled to under his request for a **full consumer file disclosure** of "ALL" information in his file(s) that the Defendants possessed at the time his request was received. Those are statements of fact not conclusory in any form or fashion. The FAC should not be dismissed.

### A. "Consumer File" Is Defined As The Information Contained In A Consumer's Credit Report/Disclosure.

In their argument for dismissal, Defendants immediately begin by conflating the words disclosure and credit report (disclosure/credit report) by arguing they are synonymous. Nowhere in the FCRA is the term "disclosure/credit report" used. A credit report is a disclosure of course.. . of credit information. That does not mean it is necessarily a disclosure of **all** information held in a consumer's file at a certain time. The plain language of the FCRA requires, among other obligations, that CRAs "clearly and accurately disclose" to a requesting consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* § 1681a(g). The United States Court of Appeals for the Seventh Circuit has found that "[t]he term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency *that might be furnished, or has been furnished, in a consumer report on that consumer*." *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007) (emphasis in original) (citing

16 C.F.R. pt. 600, app. § 603). Defendants cite *Gillespie* in their arguments stating that Federal Courts and the FTC have limited the scope of the term "file" to all information on the consumer included in a consumer report that would be sent to a third party. The flaw in using that argument in this case is that it is taken out of context and misinterpreted as well as an incomplete statement. The Defendants later state more completely and truthfully about *Gillespie: Gillespie* cites the FTC's commentary on § 1681g(a)(1) regarding the limited scope of the term "file": "The term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that **might** be furnished, or **has** been furnished, in a consumer report on that consumer." *Id* at 909 (quoting 16 C.F.R. pt. 600, app. § 603). (Emphasis added) The Defendants point to the Federal Trade Commission's[12] interpretation of the term "file" and attempt to mislead the Court. The 40 Years Commentary, p. 71 states "[A]ncillary records" such as "a CRA's audit trail of changes it makes in the consumer's file, billing records, or the contents of a consumer relations folder are not included in the term "information in the consumer's file."' The United States Court of Appeals for the Third Circuit has ruled that a CRA may not evade disclosure requirements by, for example, "contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report." *Cortez v. Trans Union, LLC.,* 617 F.3d 688, 711 (3d Cir. 2010), or by using "[c]orporate organization, reorganization, structure, or restructuring." To circumvent reporting requirements. 12 C.F.R. § 1022. 140(a). *Jones v. Equifax* No. 3:15-cv-112-RJC-DSC United States District Court, W.D. North Carolina, Charlotte Division April 11, 2016. Defendant's

---

[12] The interpretation and enforcement of the FCRA transferred from the FTC to Consumer Financial Protection Bureau ("CFPB") after passage of the Consumer Financial Protection Act of 2010. In preparation for the transition, in July 2011, the FTC published "40 years of Experience with the Fair Credit Reporting Act—An FTC Staff Report with Summary of Interpretations" ("40 Years Commentary"). The report stated that the CRA must disclose all items in the consumer's file, but that "ancillary records", for example, "a CRA's audit trail of changes it makes in the consumer's file, billing records, or the contents of a consumer relations folder, are not included in the term 'information in the consumer's file.'" See 40 Years Commentary, p. 71.

argument has no merit when looking at the plain language of the statute and case law.

The FTC does not state that all a CRA is required to provide in response to a request for a full consumer file disclosure is a "credit report." The plain language of the FCRA requires, among other obligations, that CRAs "clearly and accurately disclose" to a requesting consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The Court should note that it does not say "[a]ll **CREDIT** information in the file…(emphasis added) All information means just that…**ALL** information outside of the exclusions as stated in § 1681 g(a)(1)(B) and § 1681g(a)(2).

The Defendants, by conflating language and use of a clearly non-analogous case—*Gillespie*—would have the Court accept that Congress did not mean exactly what it said but meant to use words that are not there.[13] The *Gillespie* case as used by Defendants is just a glaring red herring. The plaintiff in that case was pursuing what the statute clearly outlines as "ancillary information" which, since it could not be included in any report shared with a third party under any circumstances, does not have to be shared with the the consumer either. Since Plaintiff AT NO TIME requested any such information, the *Gillespie* case is clearly analogous to this case. When Mr. Scott requested his **full consumer file disclosure** his letters were directly quoted from the statute. The tactics employed by the Defendants in this case arise from two maneuvers; <u>first</u> to misrepresent the language of the statute and the interpretation of it within the FTC's official publication and <u>second,</u> they fail to note other controlling sections in regard to 1681g in the statute which are relevant.

The FCRA defines many different types of "files" all of which are considered to be

---

[13] Congress knows how to mandate disclosure of the full contents of a consumer's file when it intends to require such disclosure. See, e.g., Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 452, 122 S. Ct. 941, 151 L.Ed.2d 908 (2002) (stating, "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (internal quotation marks and citation omitted).

"consumer files" ie; investigative, employment, insurance related reports etc. However, it is quite specific in relation to section 1681g. There the definition is clear (pg. 31 of 40 years Doc.):

> Section 603g defines "file" when used in connection with information on any consumer, to mean "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

The definition does NOT contain the words "consumer file". The definition does not identify any *type* or *sub-type* of information, particular *type* of file or limitation as to the *type* of information contained in a file.

In addition, the FTC interpretation takes the definition of what information is referred to by section 1681g even further (pg. 32 of 40 years doc) under "SCOPE":

> "The term "file" includes all information on the consumer that is recorded and retained by a CRA— regardless of how the information is stored--- that *has been or might be* provided in a consumer report on that consumer. The term includes such information that a CRA has kept for archival purposes, because the definition includes all data "retained" and "stored" by the CRA.

The phrase "**has been or might be**" is key here. Section 605(a) places time limits beyond which CRAs cannot include information in consumer reports, subject to exceptions set forth in 605(b).

Two sub-sections of 605(a) are **key** to the type of information retained in a CRA's files on a consumer which cannot be included in a conventional "credit report" such as can be obtained by a consumer through annualcreditreport.com, with important exceptions that the average unsophisticated consumer is not even aware of (page 55 of 40 years doc):

**PROVISION LIMITED TO "ADVERSE INFORMATION**
4. The seven-year reporting period applies only to "adverse" information that casts the consumer in a negative or unfavorable light. CRAs are not bound by that seven-year limit in reporting dates of employment and educational histories, because such dates are not "adverse" information.

**RETENTION OF INFORMATION IN FILES**
5. CRAs may retain adverse information described in subsection (a) **and furnish it in reports** for purposes that are exempt under subsection (b), described below. For example, the CRA may retain obsolete information for the purpose of furnishing it to persons engaged in (1) credit transaction or the underwriting of life insurance involving a principal amount of $150,000 or more, or (2) the employment of any individual with an annual salary expected to equal $75,000 or more. (emphasis added)

These sections would leave even an unsophisticated reader to understand that when

information is "deleted" by reason of time limit prohibitions <u>for inclusion in a credit report</u> it isn't really "deleted" at all. Rather it is "suppressed" and "**may have been or might be"** disclosed without the consumer's knowledge to a third party under certain circumstances. This is just one example of the type of information which might be "archived" or considered "obsolete" by the CRA. Section 1681g clearly states that this information must be disclosed to the consumer when that consumer properly asks for it.

## B. Plaintiff Admits He Received A Copy Of His Credit Report/Disclosure From Equifax and Trans Union

Plaintiff readily admits he received a "credit file" from Defendants who he made a request to, not EIS, which was described by Equifax as being "commonly called a Consumer Credit Report" and Trans Union described it as a "Personal Credit Report." Both of these are just an example of **one type of disclosure**. There was no indication from Equifax that it was sent from EIS. Mr. Scott specifically asked for something other than a credit file or credit report. He requested a **full consumer file disclosure** which would include "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The fact that the Defendants sent Mr. Scott a credit file or credit report does not equate to it providing his requested full consumer file disclosure UNLESS that is all that they had in its files that relates to Mr. Scott whether it **has** been or **might** be furnished in a consumer report of **any** kind. Instead of beating the dead horse here, why don't the Defendants just state they have no other information in their files as it pertains to Mr. Scott in their motion to dismiss?

It is apparent from the Defendant's selective reading of the Plaintiff's Amended Complaint that the confusion rests solely with the Defendants in terms of what is the difference between a "consumer file disclosure" and a "credit report." Defendants cite *Pettway v. Equifax Info. Servs., LLC,* 2010 U.S. Dist. LEXUS 13800, at *22 (S.D. Ala. Feb 12, 2010). A "consumer report" or

"consumer credit report" is different from a consumer disclosure." Plaintiff asked for a **full consumer file disclosure** not a credit report. "Consumer reports" are generated by a CRA and delivered to a third party for use in deciding whether the consumer is eligible for credit or other purposes. 15 U.S.C. § 1681a(d). Plaintiff asked for a **full consumer file disclosure** not a credit report or consumer report. Defendants also cite *Wantz v. Experian Information Solutions.,* 386 F.3d 829, 834 (7th Cir. 2004). This case bolsters what constitutes a credit report or a consumer report. Plaintiff couldn't agree more, but that is not what is at issue in this case. Plaintiff asked for a **full consumer file disclosure** not a credit report or consumer report. The only confusion the Plaintiff has, is in regards to why the Defendants used these two cases to support their argument.

### C. Mr. Scott Provides No Factual Basis For His Assertion That The "Credit Report" He Received Was Not His "Full Consumer File Disclosure."

As previously stated in the past arguments, Plaintiff requested a full consumer file disclosure and not a "credit report." Why would the Plaintiff not believe that the "Defendants Credit Report" was not his "full consumer file disclosure?" Well it would appear that the other major CRAs as well as the Defendants have diligently conditioned the courts, regulators and the public to think of a full file disclosure (which is precisely what a consumer is entitled to under the law *when a proper request is made)* as a credit report which contains only certain information they retain about consumers so what is provided and potentially subject to dispute is minimal. Plaintiff has used the website annualcreditreport.com to request copies of his credit reports from the three major CRAs in the past. In this case, he requested something different, he requested his full file disclosure directly with the three CRAs and not his credit report. Since the hack of the Equifax database and all the media attention it has created, the Plaintiff became

aware that there appeared to be additional information about a consumer in a CRA's files than what was provided in the credit reports he obtained from annualcreditreport.com . The Court should take note that the annualcreditreport.com website (which was created and is maintained by the major CRA's) has No place on it where a consumer can request their full consumer file disclosure but instead only provides the consumer with the option to request a credit report. (See Exhibit 4)

Some companies do provide far more information when a request for a full file disclosure is made of them. As an example, Mr. Scott made a request to LexisNexis (which is a company comparable to Equifax, Trans Union and Experian in size and a competitor) for his full consumer file disclosure. In response he received documents with the greeting Thank you for contacting LexisNexis to obtain your Full File Disclosure with a myriad of consumer reports attached. (Emphasis added) How refreshing; they used the proper terminology when responding! The disclosure from LexisNexis was 280 pages of information (some of which was erroneous and dates back to 1989) and didn't even contain credit account information that must be requested separately from LexisNexis. (See Exhibit 5)

By comparison, what was received from Equifax in response to Plaintiff's request for his full consumer file disclosure was a disappointing 26 page file stating: **"Thank you for requesting your credit file, commonly called a Consumer Credit Report."** (See Exhibit 1) What Plaintiff received from Trans Union in response to his request for his full consumer file disclosure was a dismal 9 page file stating: **"Enclosed is the TransUnion Personal Credit Report that you requested."** (See Exhibit 2) Also of interest is that on page one of the Trans Union file, it states : **"You have been on our files since 07/01/1989."** (See Exhibit 6) Why is it that LexisNexis can comply with requirements of the FCRA and the Defendants

choose not to? This created a reasonable belief based on information known by this consumer that a full consumer file disclosure had not been provided by Defendants after multiple requests and is required under the FCRA upon a consumers request. (Emphasis added)

There are multiple types of consumer reports that are generated by the CRA's based on information they have in their files regarding such things as rental history, criminal background, public records, employment etc. The argument that all the Defendants had to do is provide information to Mr. Scott that is specific to one particular type (a credit report) is fatally flawed. The case law that the Defendants cite in this last argument are completely analogous to this case especially since it has to do with issues of fraud. The Defendants are once again trying to steer the attention of the Court into thinking the Plaintiff is alleging fraud in this case. The Defendants argument here as argued previously is meritless. Even the CFPB has declared in a 2017 Consent Order that Equifax, Inc. is in fact subject to the FCRA.[14] On page 6 under Part IV the Order states:

> "Equifax Inc. is headquartered in Atlanta, Georgia, and compiles and maintains financial, consumer, and Commercial data across the nation and worldwide. Equifax Inc. is the parent company of Equifax Consumer Services LLC." Equifax Inc. is a "covered person" as that term is defined by the CFPA, 12 U.S.C. § 5481(6)

> "Equifax agrees that the facts described in Section IV of the Consent Order will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding before the Bureau to enforce the Consent Order, or in any subsequent civil litigation by the Bureau to enforce the Consent Order or its rights to any payment or monetary judgment under the Consent Order. (emphasis added)

It seems that the outdated "unbroken line of authority" Equifax cites has been replaced by more recent regulatory findings and statements by Equifax's own legal representatives. (See Exhibit 7) The Defendant's arguments have absolutely no merit when looking at the facts on the record and Plaintiff's FAC. Their motion should be denied in its entirety.

---

[14] https://files.consumerfinance.gov/f/documents/201701_cfpb_Equifax-consent-order.pdf

## CONCLUSION

As well- established major consumer reporting agencies, Defendants knows full well of the requirements of the FCRA and how it pertains to this case. They also know whether they have any information in their files that relates to James W Scott that was not disclosed to him after his request. The fact that they did not state categorically that they do not have additional information relating to James W Scott as a consumer in their files in their motion to dismiss would leave a reasonable person, including this Court, to reasonably assume there might be more information and that this case should go forward to Discovery to answer that question factually.

**WHEREFORE,** because the Defendants failed to bring any cognizable or legitimate arguments for dismissal before this Honorable Court, Plaintiff respectfully requests the Court to DENY Defendant's motion to dismiss and allow Plaintiff's claim to move forward to trial on the merits. In the event the Court finds that the Plaintiff has failed to state a claim as alleged by Defendants, Plaintiff requests leave of this Court to Amend the Complaint to cure any deficiencies identified by this Honorable Court.

Dated: May 15, 2018

Respectfully Submitted,

James W Scott
3457 Deercreek Palladian Circle
Deerfield Beach, Florida 33442
Jwsscott777@gmail.com
**954-540-0408 cellphone**

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2018, I filed the foregoing with the Clerk of the Court conventionaly. I also certify that the foregoing document is being sent by USPS to the following:

## SERVICE LIST

Franklin G. Cosmen, Jr.
Quintairos, Prieto, Wood & Bower P.A.
9300 S. Dadeland Blvd, 4th Floor
Miami, Florida 33156
Telephone: 305-670-1101
Email: fcosmen@qpwblaw.com
Counsel for Trans Union

John Anthony Love
King & Spalding
1180 Peachtree Street NE
Atlanta, GA 30309
404-572-4600
tlove@kslaw.com
Counsel for Equifax

Erika S. Whyte
Florida Bar No. 91133
Jones Day
600 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone:  (305) 714-9700
Facsimile:  (305) 714-9799
ewhyte@jonesday.com
*Counsel for Defendant*
*Experian Information Solutions, Inc.*

Dated: May 15, 2018

James W Scott

# EXHIBIT 1

*** 360365029-032 ***
TransUnion LLC
PO Box 805
Woodlyn, PA 19094-0805



10/28/2017



Find an inaccuracy on your report?
Submit your dispute online at:
http://transunion.com/disputeonline

P7JWYH00201477-I019873-042080676

JAMES WESLEY SCOTT
3457 DEER CREEK PALLADIAN CIR
DEERFIELD BEACH, FL 33442-7949

Enclosed is the TransUnion Personal Credit Report that you requested. As a trusted leader in the consumer credit information industry, TransUnion takes the accuracy of your credit information very seriously. We are committed to providing the complete and reliable credit information that you need to participate in everyday transactions and purchases.

If you believe an item of information to be incomplete or inaccurate, please alert us immediately. We will investigate the data and notify you of the results of our investigation.

To make it easier to request an investigation, you can now submit your request online, **24 hours a day, 7 days a week.** You must have an active email address to use the online service. Please note that your email address will only be used for communicating with you regarding your request and the results of our investigation. Your email address will not be shared with any non-TransUnion entities.

**To submit an online request for investigation:**

**Step 1.** Go to the TransUnion online investigation service at http://transunion.com/disputeonline
**Step 2.** Follow the instructions provided by the web site.

Once submitted, you will receive online confirmation of your request. You will also be notified by email when we complete our investigation and your results will be available online. You can check the status of your investigation online by logging into your account.

Thank you for helping ensure the accuracy of your credit information.

TransUnion Consumer Relations

For frequently asked questions about your credit report, please visit http://transunion.com/consumerfaqs .

# EXHIBIT 2

# EQUIFAX

CREDIT FILE:  November 6, 2017

Confirmation # 7310020239

Dear JAMES W SCOTT:

Thank you for requesting your credit file, commonly called a Consumer Credit Report. Your credit file contains information received primarily from companies which have granted you credit and from public record sources.  Great care has been taken to report this information correctly.  Please help us in achieving even greater accuracy by reviewing all of the enclosed material carefully.

If there are items you believe to be incorrect, you may be able to initiate an investigation request via the Internet 24 hours a day, 7 days a week at:

## www.investigate.equifax.com

Using the Internet to initiate an on-line investigation request will expedite the resolution of your concerns.

Or you may complete the enclosed Research Request Form and return it to:

> **Equifax Information Services LLC**
> **Www. Equifax. Com/fcra**
> **Atlanta GA 30348**

***NOTE:  Sending the Research Request Form to any other address will delay the processing of your request.***

Please note, when you provide documents, including a letter, to Equifax as part of your dispute, the documents may be submitted to one or more companies whose information are the subject of your dispute.

**Under the FACT Act, you have the right to request and obtain a copy of your credit score.  To obtain a copy of your credit score, please call our automated ordering system at: *1-877-SCORE-11*.**

---

For an added convenience, use one of the below options to start an investigation or check the status of your dispute.

Visit us at **www.equifax.com/CreditReportAssistance** or Call us at  866-349-5186.

---

# EXHIBIT 3

# KING & SPALDING

King & Spalding LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
Tel: +1 404 572 4600
Fax: +1 404 572 5100
www.kslaw.com

Phyllis B. Sumner
Direct Dial: +1 404 572 4799
Direct Fax: +1 404 572 5100
psumner@kslaw.com

October 12, 2017

To:     Exhibit A; Distribution List

Re:     Data Security Incident Announced on September 7, 2017 Affecting Equifax Inc.

Dear Sir or Madam,

I write on behalf of Equifax Inc. ("Equifax") to follow up on the September 7, 2017 notification regarding a cybersecurity incident impacting the personal information of U.S. consumers. On October 2, 2017, Equifax announced that the cybersecurity firm Mandiant completed the forensic portion of its investigation of the cybersecurity incident announced on September 7, 2017 to finalize the consumers potentially impacted. The completed review determined that approximately 2.5 million additional U.S. consumers were potentially impacted, for a total of approximately 145.5 million. An updated approximate number of potentially impacted residents in your state is identified in Exhibit B.

Mandiant did not identify any evidence of additional or new attacker activity or any access to new databases or tables. Instead, this additional population of consumers was confirmed during Mandiant's completion of the remaining investigative tasks and quality assurance procedures built into the investigative process. To be clear, additional U.S. consumers identified, and the unauthorized access of information, all relate to the cybersecurity incident disclosed on September 7, 2017. To minimize confusion, Equifax will mail written notices to all of the additional potentially impacted U.S. consumers identified since the September 7 announcement. An unaddressed copy of that letter is attached as Exhibit C. The feature on the dedicated website, www.equifaxsecurity2017.com, that U.S. consumers may use to determine whether they may have been impacted has been updated to reflect the additional 2.5 million impacted U.S. consumers. Equifax takes seriously its responsibility to protect the security of personal information, and our priority is to assist consumers who may have been impacted.

Please do not hesitate to contact me if you have any questions regarding this update.

Sincerely,

Phyllis B. Sumner

CC: Zachary Fardon
     Christopher C. Burris

Enclosures

# EXHIBIT 4

# Annual Credit Report.com

The only source for your free credit reports. Authorized by Federal law.

**Home** | **All about credit reports** | **Request yours now!** | **What to look for** | **Protect your identity** | **Frequently asked questions**

**Contact us**

## Spot identity theft early.
## Review your credit reports.

Suspicious activity or accounts you don't recognize can be signs of identity theft. Review your credit reports to catch problems early.

[ Learn more about Identity Theft ]

| PAUSE | SPOT IDENTITY THEFT | GOOD CREDIT | DON'T BE FOOLED | MORE THAN A SCORE | NOT LIKE THE OTHERS |

**Your credit reports matter.**

- Credit reports may affect your mortgage rates, credit card approvals, apartment requests, or even your job application.

- Reviewing credit reports helps you catch signs of identity theft early.

[ Request your free credit reports ]

**FREE Credit Reports.** Federal law allows you to:

- Get a free copy of your credit report every 12 months from each credit reporting company.

- Ensure that the information on all of your credit reports is correct and up to date.

**BROUGHT TO YOU BY**









About this site  Privacy  Security  Terms of use
Copyright © 2018 Central Source, LLC

Secure Transaction: For your protection, this website is secured with the highest level of SSL Certificate encryption.

VERIFIED BY GeoTrust
Central Sourc...
CLICK 4.05.18 16:08 UT

# EXHIBIT 5



LexisNexis Consumer Center

Consumer Number: 12642635

Case Number: 94715905

May 04, 2018

JAMES WESLEY SCOTT
3457 DEER CREEK PALLADIAN CIR
DEERFIELD BEACH, FL 33442

Dear: JAMES WESLEY SCOTT

Thank you for contacting LexisNexis® to obtain your Full File Disclosure. We are providing this information pursuant to Section 609 of the Fair Credit Reporting Act. LexisNexis® only provides consumer reports to customers that have a permissible purpose to access your information. Because this information can be provided through different products, we are disclosing the data to you under several different reports, which are described below.

If we do not have information for a particular report, we will notify you that no information was found.

LexisNexis® takes great pride in being a leading provider of reliable risk management information. To help assure the continued quality of our data, please carefully review the enclosed material and notify us of any disputes you may have.

| Enclosed Reports | | |
|---|---|---|
| **C.L.U.E.™ Report - Auto ™** | Summarizes auto insurance loss history provided by participating insurance companies. | Used to assess applications and renewals of auto insurance underwriting. |
| **C.L.U.E.™ Report - Property** | Summarizes property insurance loss history provided by participating insurance companies. | Used to assess applications and renewals of property insurance underwriting. |
| **Current Carrier™ Reports** | Summarizes historical home and auto coverage information provided by participating insurance companies. | Used to assess current insurance coverage as well as identify gaps in prior underwriting. |
| **InsurView™** | Provides attributes using public record data | Used for insurance underwriting and insurance prescreen |
| **Traffic Violation Search™** | Provides search results from public records. | Used to assess applications and renewals of insurance underwriting. |



| To be mailed seperately | | |
|---|---|---|
| **Banko™ Report** | Provides search results from national court records regarding bankruptcies, tax liens, judgments. | Used to monitor developments that could affect a current account relationship. |
| **Benefit Assessment™ Report** | Provides search results from public records, including property and personal information. | Used by public assistance agencies to evaluate applications for government benefits. |
| **Collections Decisioning™ Report** | Provides search results from public records. | Used to determine a consumer's ability to pay an outstanding debt. |
| **Life Public Records™ Disclosure Report®** | Provides search results from public records. | Used for underwriting life insurance. |
| **RiskView™ Report** | Provides search results from public records. | Used by lenders to evaluate an applicant's ability and willingness to repay a debt. |

Additional specialty reports may also be included if such items have been previously ordered by our customers and have been retained in our files.

Please review each report carefully and notify us of any concerns at the address below or using the toll-free number included on the cover letter to each report. To expedite the dispute process, please be prepared to provide us with proper identification, and any information (particularly explanatory documents) that will help us resolve your concerns.

An affiliate of LexisNexis Risk Solutions Inc., provides debt collectors with "contact and locate" information about consumers. That information is not a "consumer report" under the FCRA and is not enclosed in this mailing. For more information about this "contact and locate" information, or to request a copy of such report about you, please visit http://www.lexisnexis.com/privacy/for-consumers/request-personal-information.aspx or call 866-868-9534.

Thank you for allowing us the opportunity to assist you.

LexisNexis Consumer Center
P.O. BOX 105108
Atlanta, GA  30348-5108

 **LexisNexis·** | **Personal Reports**

| Home | Full File Disclosure | FACT Act Disclosure | Additional Reports | Your FCRA Rights | Help |



## Access Your Full File Disclosure

See what information about you is maintained in our files - Order copies of the information that we maintain and use to create consumer reports about you. This includes items such as real estate transaction and ownership data, lien, judgment, and bankruptcy records, professional license information, and historical addresses on file.

**Full File Disclosure Request Form and Instructions**

Once we have verified your identity, all information will be mailed to the address you provide on the request form. We will also include contact information in case you have questions about the information or feel there is an error in any of the reports.

Questions About Your LexisNexis Full File Disclosure? Click Here to send us an e-mail.

 **TRUSTe**
Certified Privacy   About Us | Contact Us | Your Rights | Site Map
Powered by TrustArc   Copyright © 2010 LexisNexis Risk Solutions. All rights reserved. Terms & Conditions | Privacy Policy

# EXHIBIT 6


**TransUnion.**

| File Number: | 360365029 |
|---|---|
| Date Issued: | 10/28/2017 |

## Personal Information

You have been on our files since 07/01/1989

**SSN:** XXX-XX-5033

**Date of Birth:** ████ 968

**Names Reported:** JAMES WESLEY SCOTT and JIM W. SCOTT

### Addresses Reported:

| Address | Date Reported | Address | Date Reported |
|---|---|---|---|
| 3457 DEER CREEK PALLADIAN CIR, DEERFIELD BEACH, FL 33442-7949 | 04/05/2016 | ████████████████ | 02/01/2007 |
| 1756 NE ████████████████ | 04/01/2013 | 92██████████████████ | 01/01/1998 |
| 3457 DEER CREEK COUNTRY CLUB BLVD, DEERFIELD BEACH, FL 33442-8427 | 03/18/2016 | ████████████████████ | |
| 1036 NE ████████████ FORT LAUDERDALE, ████████ | 07/01/2012 | | |

### Telephone Numbers Reported:

(954) 540-0408      (561) 470-5462      (954) 771-8181      (954) 470-5462      (561) 241-7400

### Employment Data Reported:

| Employer Name | Date Verified | Location | Position |
|---|---|---|---|
| ████████████ | 08/09/2015 | | |
| ████████████ | 02/01/2007 | FORT LAUDERDALE, FL | OWNER |
| | 11/17/2003 | | |

## Account Information

Typically, creditors report any changes made to your account monthly. This means that some accounts listed below may not reflect the most recent activity until the creditor's next reporting. This information may include things such as balances, payments, dates, remarks, ratings, etc. The key(s) below are provided to help you understand some of the account information that could be reported.

### Rating Key

Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. Any rating that is shaded indicates that it is considered adverse. Please note: Some but not all of these ratings may be present in your credit report.

| N/R | X | OK | 30 | 60 | 90 | 120 | COL | VS | RPO | C/O | FC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120+ days late | Collection | Voluntary Surrender | Repossession | Charge Off | Foreclosure |

### Remark Key

Additionally, some creditors may notate your account with comments each month. We refer to these creditor comments as "Remarks". The key below gives the descriptions of the abbreviated remarks contained in your credit file. Any remark containing brackets › ‹ indicates that this remark is considered adverse.

| | | | |
|---|---|---|---|
| **AID** | ACCT INFO DISPUTED BY CONSUMR | **AND** | AFFCTD BY NTRL/DCLRD DISASTR | **CBG** | CLOSED BY CREDIT GRANTOR |
| **DRC** | DISP INVG COMP-CONSUM DISAGRS | **›FPI‹** | FORECLOSURE INITIATED | **›PRL‹** | UNPAID BALANCE CHARGED OFF |

## Adverse Accounts

3██████████████████ **-** **** (██████████████████████████████)

| | | | | |
|---|---|---|---|---|
| Date Opened: | 0█████ | Date Updated: | 09████ | Pay Status: ›Account 120 Days Past Due Date‹ |
| Responsibility: | Individual Account | Last Payment Made: | ████ | Terms: ███████████ |
| Account Type: | M█████████ | | | ›Maximum Delinquency of ████ days ██████ |
| Loan Type: | ██████ | | | for ███████████████████ |

**High Balance:** High balance ███████ at 05/2017 to 06/2017 ██████████████████ 2017
**Estimated month and year that this item will be removed:** 02/2024

| | 09/2017 | 08/2017 | 07/2017 | 06/2017 | 05/2017 | 04/2017 | 03/2017 | 02/2017 | 01/2017 | 12/2016 | 11/2016 | 10/2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | ████ | ████ | ████ | ████ | | | | | | | | |
| Scheduled Payment | ████ | ████ | ████ | ████ | | | | | | | | |
| Amount Paid | | | $0 | | $0 | | | | | | | |
| Past Due | ████ | ████ | ████ | ████ | | | | | | | | |
| Remarks | FPI | FPI | | | | | | | | | | |
| Rating | ████ | 120 | 120 | 90 | 60 | 30 | OK | OK | OK | OK | OK | X |

| | 09/2016 |
|---|---|
| Rating | X |

**To dispute online go to: http://transunion.com/disputeonline**

# EXHIBIT 7

m. "Relevant Period" includes the period from July 21, 2011 through March 14, 2014.

n. "Respondents" means Equifax Inc. and Equifax Consumer Services LLC, and their successors and assigns.

### IV

### Bureau Findings and Conclusions

The Bureau finds the following:

4.  Equifax Inc. is headquartered in Atlanta, Georgia, and compiles and maintains financial, consumer, and commercial data across the nation and worldwide. Equifax Inc. is the parent company of Equifax Consumer Services LLC.

5.  Equifax Inc. is a "covered person" as that term is defined by the CFPA, 12 U.S.C. § 5481(6).

6.  Respondents market and sell credit reports to consumers and to commercial users including, but not limited to, lenders, insurance companies, and potential employers.

7.  During the Relevant Period, Equifax marketed and sold Equifax Credit-Related Products to consumers. Consumers could purchase these products from Equifax in a one-time transaction or through a subscription where the consumer paid a recurring fee, usually monthly, to have continuous access to the product for as long as the consumer was enrolled in the subscription.

8.  During the Relevant Period, Equifax marketed and sold Equifax Credit-Related Products to consumers through a variety of online channels, including banner and display advertisements that appeared on popular websites, direct emails to