**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 18-CV-60178-ALTONAGA/SELTZER

JAMES W. SCOTT,

        Plaintiff,

    v.

EXPERIAN INFORMATION
SOLUTIONS, INC., *et al.,*

        Defendants.

_____ /

**DEFENDANTS TRANS UNION LLC, EQUIFAX INFORMATION SERVICES, LLC, EQUIFAX, INC., AND EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 2

III.    LEGAL STANDARD................................................................................................ 4

IV.     ARGUMENT ............................................................................................................ 5

      A.    The Second Amended Complaint Fails to State a Plausible Claim for
          Relief...................................................................................................................... 5

          1.    Plaintiff Fails to Explain How the Alleged LexisNexis Documents
               Are Related to the Consumer Disclosures He Received............................ 6

          2.    Plaintiff Fails to Show any Item in His Equifax Credit File was
               Excluded from the Consumer Disclosures He Received ........................... 7

      B.    Plaintiff Lacks Standing Because the Second Amended Complaint Does
          Not Allege a Concrete Injury ............................................................................... 8

      C.    The Second Amended Complaint Does Not Allege That Defendants
          Willfully Violated the Fair Credit Reporting Act ................................................ 10

          1.    Under the FCRA, Willfulness is a High Standard that Requires a
               Knowing or Reckless Violation ............................................................... 10

          2.    Plaintiff's Allegations Do Not Rise to the Level of a Knowing or
               Reckless Violation; He Does Not Allege a Violation at All.................... 12

V.      CONCLUSION......................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page**

## Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................ 4, 5, 6, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................ 4, 5, 6, 7

*Berry v. Schulman*,
   807 F.3d 600 (4th Cir. 2015) ................................................................................. 11

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) ............................................................................... 7

*Dreher v. Experian Info. Sols., Inc.*,
   856 F.3d 337 (4th Cir. 2017) .................................................................................... 9

*Friends of Animals v. Jewell*,
   828 F.3d 989 (D.C. Cir. 2016) .................................................................................. 9

*Fuges v. Sw. Fin. Servs., Ltd.*,
   707 F.3d 241 (3d Cir. 2012) ................................................................................... 12

*Gillespie v. Trans Union Corp.*,
   482 F.3d 907 (7th Cir. 2007) ....................................................................... 12, 14, 15

*Johnson v. Equifax, Inc.*,
   510 F. Supp. 2d 638 (S.D. Ala. 2007) ...................................................................... 3

*Larson v. Trans Union, LLC*,
   2014 WL 1477705 (N.D. Cal. Apr. 14, 2014) .......................................................... 5

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)................................................................................................ 10

*Lyshe v. Levy*,
   854 F.3d 855 (6th Cir. 2017) .................................................................................. 10

*Morris v. TeleCheck Servs., Inc.*,
   2008 WL 11422604 (N.D. Ala. Sept. 23, 2008) ..................................................... 15

*Nunnally v. Equifax Info. Servs., LLC*,
   451 F.3d 768 (11th Cir. 2006) ................................................................................ 15

*Parker v. Equifax Info. Servs., LLC*,
   2017 WL 4003437 (E.D. Mich. Sept. 12, 2017)....................................................... 6

**TABLE OF AUTHORITIES**
(continued)

Page

*Pettway v. Equifax Info. Servs., LLC*,
   2010 WL 653708 (S.D. Ala. Feb. 17, 2010) .......................................................... 3

*Postell v. Fifth Third Bank*,
   2013 WL 2043420 (M.D. Fla. Apr. 26, 2013) ...................................................... 5

*Rumbough v. Comenity Capital Bank*,
   2017 WL 5714254 (M.D. Fla. Nov. 27, 2017) .................................................... 14

*Safeco Ins. Co. of Am.  v. Burr*,
   551 U.S. 47 (2007) ............................................................................................ 11

*Saucier v. Katz*,
   533 U.S. 194 (2001) .......................................................................................... 11

*Shaw v. Experian Info. Solutions, Inc.*,
   891 F.3d 749 (9th Cir. 2018) ............................................................................ 15

*Spokeo v. Robins*,
   136 S. Ct. 1540 (2016) ..................................................................................... 8, 9

*Stacy v. Dollar Tree Stores, Inc.*,
   274 F. Supp. 3d 1355 (S.D. Fla. 2017) ............................................................. 10

*United States v. Caraballo-Martinez*,
   866 F.3d 1233 (11th Cir. 2017) ........................................................................ 15

**Statutes**

15 U.S.C. § 1681a ...................................................................................................... 15

15 U.S.C. § 1681c ........................................................................................................ 7

15 U.S.C. § 1681g ................................................................................................. passim

15 U.S.C. § 1681i ....................................................................................................... 15

15 U.S.C. § 1681n ...................................................................................................... 10

15 U.S.C. § 1681o ...................................................................................................... 10

Dodd-Frank Wall Street Reform & Consumer Protection Act, Pub. L. No. 111-203
   § 1088, 124 Stat. 1376 ..................................................................................... 13

**Rules**

Fed. R. Civ. P. 12 ................................................................................................... 1, 4

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Regulations**

16 C.F.R. pt. 600 ............................................................................................................ 13

**Other Authorities**

Dee Pridgen & Richard M. Alderman, *Consumer Credit & the Law* (Nov. 2017) ..................... 14

S. Rep. No. 104-185 (1995) ........................................................................................... 13

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Trans Union LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax"), Equifax, Inc., and Experian Information Solutions, Inc. ("Experian") hereby file this motion to dismiss the Second Amended Complaint ("SAC") filed by Plaintiff James W. Scott.

## I.    <u>INTRODUCTION</u>

In his Second Amended Complaint, plaintiff alleges that Trans Union, Equifax, Equifax, Inc., and Experian willfully violated 15 U.S.C. § 1681g of the Fair Credit Reporting Act ("FCRA") by failing to provide Plaintiff with all information maintained in his consumer file. The Court dismissed the previous iteration of Plaintiff's Complaint for relying on surmise and speculation, noting that Plaintiff failed to point to any information actually missing from the files provided him or to allege any specific facts suggesting that the Defendants failed to meet their disclosure obligations under the FCRA.  On this score, the SAC fares no better.

The SAC does not plausibly allege that Defendants denied Plaintiff information, or that such information even exists.  Plaintiff vaguely alleges that he received from a third-party, LexisNexis, a full file disclosure that includes information not contained in Defendants' disclosures.  Critically, however, Plaintiff—who has both the LexisNexis file and Defendants' disclosures in his possession—fails to identify a specific piece of information that Defendants provided to LexisNexis and not to him.  The mere fact that LexisNexis (itself a credit reporting agency) has allegedly collected certain information about Plaintiff that Defendants have not does not rise to a violation of the FCRA.

But even if Plaintiff's revised Complaint was not unduly speculative, his claims suffer from at least two additional fatal flaws.

*First*, Plaintiff lacks standing to sue because the complaint does not identify a concrete harm.  A plaintiff alleging denial of information under the FCRA must show the denial created a real harm with an adverse effect.  Plaintiff does not allege that Defendants denied him information they have provided—or even intend to provide—to credit grantors, potential employers, and the like.  At most, Plaintiff alleges a technical violation of the FCRA with no real-world consequences.  Under Article III, the abstract risk that third parties *might* obtain inaccurate or misleading information at some undefined point in the future does not rise to the level of an Article III case or controversy.

*Second*, even taking Plaintiff's conclusory allegations as true, nothing in the SAC shows that Defendants "willfully" violated the FCRA, as Plaintiff is obligated to prove.  At least two appellate courts have held that § 1681g(a)(1) requires credit reporting agencies ("CRAs") to disclose information included in a consumer report to third parties, such as potential creditors.  Unless the plaintiff makes some showing that the CRA failed to disclose information contained in a consumer report, a claim under § 1681g(a)(1) fails.  The prevailing case law would warrant dismissal even in a case under the FCRA's negligence standard; at the least, it powerfully refutes Plaintiff's contention that Defendants were objectively unreasonable when they responded to his request for information by providing Plaintiff with all the information contained in his consumer report.

## II.   **BACKGROUND**

Plaintiff filed his original complaint on January 26, 2018 (ECF No. 1), and his First Amended Complaint on April 11, 2018 (ECF No. 37).  After Trans Union, Equifax, and Equifax, Inc. moved to dismiss, the Court dismissed Plaintiff's First Amended Complaint on June 29, 2018.  ECF No. 49.

The FAC alleged, on information and belief, that, although Plaintiff requested his full consumer file disclosure, Defendants failed to provide Plaintiff with information previously shown in his credit reports, negative codes and other information provided to prospective creditors/insurers/employers, and archived information.  ECF No. 49 at 12.  Holding that the FAC was impermissibly premised on "speculative guesswork," the Court observed that "Plaintiff does not point to what information is actually missing from what he received from Defendants or what specific facts lead him to accuse Defendants of failing to meet their disclosure requirements under the FCRA."  *Id.* at 12, 13.  The Court dismissed the FAC but granted Plaintiff leave to "plead additional facts sufficient to support his claims alleging Defendants failed to provide his full consumer file disclosure."  *Id.* at 13.

Plaintiff filed his SAC on July 13, 2018.  ECF No. 50.  The SAC states one cause of action against each defendant under 15 U.S.C. § 1681g(a)(1), which provides that a consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer "[a]ll information in the consumer's file at the time of the request…."  *See id.* ¶¶ 53-64.

Plaintiff alleges that he made a written request for his "full consumer file disclosure" on September 20, 2017.  ECF No. 50 ¶ 20.  He alleges that, in response, "Plaintiff received a copy of his **credit report**, which was not responsive to his request."  *Id.* ¶ 21 (emphasis in original).[1]

---

[1] Plaintiff's allegations confuse "consumer disclosures" and "consumer reports" (or "credit report"), which are different.  *See Pettway v. Equifax Info. Servs., LLC*, 2010 WL 653708, at *7 (S.D. Ala. Feb. 17, 2010).  Consumer *reports* are generated by a CRA and delivered to a third party such as an employer, insurer, or lender for use in deciding whether the consumer is eligible for credit or other purposes.  *See id.*  A consumer *disclosure* is the CRA's file that it provides to the consumer, not third parties; a consumer disclosure contains information about the consumer recorded and retained by the CRA.  *Id.*  "Reports prepared solely for the consumer do not constitute 'consumer reports' under the FCRA."  *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007).

Plaintiff's allegation that he received a credit report, instead of a full consumer file disclosure, is thus nonsensical.  *See* ECF No. 50 ¶¶ 25-27.  Plaintiff indisputably received a consumer disclosure.  The only relevant question is whether Plaintiff has plausibly alleged that

Plaintiff allegedly made a second request "for a **full consumer file disclosure**," and again "received a **credit report** which was not responsive to his request." *Id.* ¶¶ 28, 30 (emphasis in original).

To establish that Defendants had information in their files that was required to be disclosed, and was not, Plaintiff alleges that he received a file disclosure from LexisNexis on May 4, 2018 (four months after Plaintiff already filed this suit).  ECF No. 50 ¶ 35.  According to Plaintiff, his LexisNexis file contained information regarding "[r]eal estate transactions and ownership data, lien, judgment and bankruptcy records, professional license information, driver license information, employment history and historical addresses on file dating back to 1989." *Id.* ¶ 36.  The SAC alleges that Defendants' disclosures, by contrast, contain none of this data concerning Plaintiff between 1989 and 2000.  *Id.* ¶ 37.

## III.   <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' ... Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual

---

he did not receive a consumer disclosure containing all the information required by § 1681g(a)(1).

allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

IV.   **ARGUMENT**

A.   **The Second Amended Complaint Fails to State a Plausible Claim for Relief.**

Defendants' motion to dismiss should be granted, first, because the SAC does not plausibly allege a violation of § 1681g(a)(1).  Notwithstanding the Court's admonition to plead additional *facts* sufficient to support his claims (ECF No. 50 at 13), Plaintiff's SAC presents no relevant factual allegations to support his claims against Defendants, instead making only speculative and conclusory allegations about what additional information may be in his "full consumer file disclosure."  To survive a motion to dismiss, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570.  The complaint thus must establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Applying *Iqbal* and *Twombly*, courts have held that it is not enough for a complaint "to assume that some data was withheld from [the plaintiff], without any factual allegations in support of that assumption." *Larson v. Trans Union, LLC*, 2014 WL 1477705, at *4 (N.D. Cal. Apr. 14, 2014).  Lacking any factual support, the mere allegation that a credit reporting agency possesses more information about a consumer than it has disclosed "stops short of the line between possibility and plausibility of entitlement to relief."[2] *Id.*

Nor may a plaintiff surmise that a consumer reporting agency has failed to disclose information and then use discovery to attempt to prove up that assumption.  "The 'doors' of

---

[2] Although plaintiff is a *pro se* litigant, "even a *pro se* litigant must allege the essential elements of a claim for relief, and vague and conclusory allegations are insufficient to state a claim." *Postell v. Fifth Third Bank*, 2013 WL 2043420, *1 (M.D. Fla. Apr. 26, 2013).

discovery are not 'unlocked' for 'a plaintiff armed with nothing more than conclusions.'"

*Parker v. Equifax Info. Servs., LLC*, 2017 WL 4003437, at *4 (E.D. Mich. Sept. 12, 2017)

(quoting *Iqbal*, 556 U.S. at 678-79).  The pleading standards established by *Iqbal* and *Twombly*

do not permit a plaintiff to file suit based on assumptions, in the hopes that factual support will

come later through discovery.  *Id.*

### 1.     Plaintiff Fails to Explain How the Alleged LexisNexis Documents Are Related to the Consumer Disclosures He Received.

Here, the SAC alleges that LexisNexis—a third party with no alleged connection to

Defendants—collected and provided Plaintiff with "a plethora of information pertaining to him

that dated from 1989 to 2010."  ECF No. 50 ¶ 35.  The face-page of Plaintiff's LexisNexis report

states that LexisNexis disclosures typically contain "items such as real estate transaction and

ownership data, lien, judgment, and bankruptcy records, professional license information, and

historical addresses on file."  *Id.* at 33.  Quoting this language, Plaintiff alleges that his

LexisNexis report contains such information, and "[t]his information is of the type that Plaintiff

should have received from the Defendants in this case."  *Id.* ¶ 35.

Plaintiff, however, does not explain how the documents he received from LexisNexis are

related to what he received from Defendants, or how any such information proves that

Defendants failed to meet the requirements of § 1681g(a)(1).  That is, Plaintiff fails to point to

precisely what information is missing from Defendants' disclosures (yet included in the

LexisNexis report), or what specific facts lead him to conclude that Defendants possess in their

files the same information as LexisNexis.  The SAC merely alleges that Plaintiff's LexisNexis

report contains unspecified "obsolete and archived information," and *surmises* that such

information *may* have come from one of the CRAs.  ECF No. 50 ¶ 36.  As with the FAC,

Plaintiff's barebones allegations of liability do not cross the threshold from possibility to plausibility, and the SAC accordingly does not pass muster under *Iqbal* and *Twombly*.

**2.**    **Plaintiff Fails to Show any Item in His Equifax Credit File was Excluded from the Consumer Disclosures He Received.**

The SAC's only other factual allegation bearing on Plaintiff's claim under § 1681g contends that, in response to Plaintiff's discovery requests, Equifax produced documents that contained "data of a few older trade-lines, which were not included" in the consumer disclosures Equifax provided to him, including a Snap-on account that contained information dated as of 2007.  ECF No. 50 ¶ 39.  Although clearly referenced in his SAC, Plaintiff did not attach the referenced documents.  *See* ECF No 50.  That failure is easily remedied.[3]  *See* Exhibit 1.

The Snap-On Credit tradeline displays a date of last activity of March 2007.  EIS-SCOTT-000003, Exhibit 1.  Since the Snap-On Credit tradeline is not negative, it stays on Plaintiff's credit report for approximately ten years.[4]  Ten years from March 2007 is March 2017.  Plaintiff received documents from Equifax dated prior to March 2017, and those documents contain references to Snap-On Credit.  For example, as Exhibit 1 shows, the Snap-On Credit tradeline (EIS-SCOTT-000003) appeared on an ACIS Case timestamped January 20, 2016 (EIS-SCOTT-000001).  Exhibit 1.  The Snap-On Credit tradeline, however, did not appear on a consumer report or consumer disclosure after March 2017.  For example, on the ACIS Case

---

[3] *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (holding that if a document is central to the plaintiff's claim and its "contents are alleged in a complaint and no party questions those contents," the Court may consider the document on a motion to dismiss without converting the motion into one for summary judgment).

[4] *See* 15 U.S.C. § 1681c(a); https://www.equifax.com/personal/education/credit/report/how-long-does-information-stay-on-credit-report/.

timestamped June 02, 2017 (EIS-SCOTT-000017), the Snap-On Credit tradeline no longer
appears (EIS-SCOTT-000024).

Plaintiff made his first request for his consumer disclosure on September 20, 2017.  ECF
No. 50 ¶ 22.  Thus, the consumer disclosure provided to him by Equifax would not have
included the Snap-On Credit tradeline because it no longer appeared in his Equifax credit file.
Accordingly, Plaintiff has failed to plead factual content that allows the Court to draw the
reasonable inference that Equifax is liable for violating § 1681g(a)(1), and the SAC should be
dismissed.

**B.**     **Plaintiff Lacks Standing Because the Second Amended Complaint Does Not
          Allege a Concrete Injury.**

Putting aside the facial implausibility of the SAC, Plaintiff alleges a technical statutory
violation that has caused no real-world harm.  As the Supreme Court has made clear, Article III
standing requires *real* harm.  *See Spokeo v. Robins*, 136 S. Ct. 1540 (2016).  The required Article
III injury is lacking here, because there is no factual allegation suggesting that Plaintiff has been
affected even slightly by the alleged violation.  This case is the epitome of the sort of no-injury
claim that *Spokeo* forbids federal courts from entertaining.

To satisfy Article III's standing requirement, the plaintiff must have (1) suffered an injury
in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely
to be redressed by a favorable judicial decision.  *Spokeo*, 136 S. Ct. at 1547.  To establish injury
in fact, a plaintiff must show that he suffered an invasion of a legally-protected interest that is
both concrete and particularized.  *Id.* at 1548.  For an injury to be concrete, "it must actually
exist" and be "real, and not abstract."  *Id.*  Notably, a plaintiff cannot automatically satisfy the
injury in fact requirement just because "a statute grants a person a statutory right and purports to
authorize that person to sue to vindicate that right."  *Id.* at 1549.  Put otherwise, one cannot

"allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement." *Id.*

The Fourth Circuit recently applied *Spokeo* to a claim under § 1681g—the same FCRA provision at issue here—in *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337 (4th Cir. 2017). The plaintiff in *Dreher* complained that although Experian disclosed certain information in his file, Experian failed to disclose the information's source, as § 1681g requires.  *See* 856 F.3d at 345.  The Fourth Circuit acknowledged that this type of informational injury *can* constitute an Article III injury-in-fact, but does not unless the plaintiff lacks "access to information to which he is legally entitled *and* … the denial of that information creates a 'real' harm with an adverse effect." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549) (emphasis in original).

To determine whether the plaintiff in *Dreher* alleged a concrete injury, the Fourth Circuit first examined whether the plaintiff alleged an injury of the type that has "'traditionally been regarded as providing a basis for a lawsuit in English or American courts.'"  836 F.3d at 345 (quoting *Spokeo*, 136 S. Ct. at 1549).  Finding none, the Fourth Circuit held that an informational injury under the FCRA is concrete only when the plaintiff is denied access to information required to be disclosed by statute, "*and* he 'suffers, by being denied access to that information, the type of harm *Congress sought to prevent* by requiring disclosure.'"  *Id.* at 345-46 (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (emphasis in original)). Because the FCRA is intended to ensure fair and accurate credit reporting, a plaintiff alleging informational injury must show that the alleged violation made a difference in the fairness or accuracy in his credit report – a showing the plaintiff in *Dreher* failed to make.  *Id.* at 346.

The case law in the 11th Circuit is in accord with *Dreher*; a constitutionally cognizable informational injury requires that the plaintiff lack information to which he is legally entitled *and*

that the denial of that information creates a real harm with an adverse effect. *See Stacy v. Dollar Tree Stores, Inc.*, 274 F. Supp. 3d 1355, 1363 (S.D. Fla. 2017) ("[a]lthough the Eleventh Circuit has not definitively set out a standard for what constitutes a concrete informational injury, its decisions hold close to the Fourth Circuit's summation in *Dreher*") (citing cases); *see also Lyshe v. Levy*, 854 F.3d 855, 860 (6th Cir. 2017) (interpreting Eleventh Circuit law to require a showing of denial of information and harm or a risk of harm).

Plaintiff, however, has failed to allege that he has suffered any "real" harm in the form of an inaccurate or unfair credit report. Indeed, Plaintiff does not even claim that the unspecified information he seeks has been provided to any third party in a credit report. ECF No. 50 ¶ 46.

At most, the SAC has alleged nothing more than a purported procedural violation under the FCRA. Any harm flowing from that purported violation is entirely abstract. Article III does not permit a plaintiff to sue because he surmises that some injury *might* occur at some point in the undefined future. Unless and until plaintiff can plausibly allege that defendants' alleged violation of § 1681g has resulted in unfair or inaccurate credit reporting, his complaint does not meet the "irreducible constitutional minimum" of a "case" or "controversy," and must be dismissed for lack of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

## C.   The Second Amended Complaint Does Not Allege That Defendants Willfully Violated the Fair Credit Reporting Act.

Finally, even if Plaintiff had standing and his allegations were plausible, Defendants' Motion should be granted because the allegations in the SAC—even when accepted as true—do not amount to a willful violation of the FCRA.

### 1.   Under the FCRA, Willfulness is a High Standard that Requires a Knowing or Reckless Violation.

Plaintiffs suing under the FCRA may allege either a negligent or willful violation of the statute. 15 U.S.C. §§ 1681n (willfulness provision), 1681o (negligence provision). To maintain

a claim for negligent violation of the FCRA, however, the plaintiff must establish actual damage – an element the SAC does not allege.  *See* 15 U.S.C. § 1681o(a)(1).  Because Plaintiff has elected to proceed exclusively under the theory that Defendants willfully violated the FCRA, the FAC must allege facts meeting this heightened standard.

"[W]illfulness is a high standard, requiring knowing or reckless disregard of the FCRA's requirements."  *Berry v. Schulman*, 807 F.3d 600, 605 (4th Cir. 2015).  In *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), the Supreme Court analogized the FCRA's willfulness standard to the "clearly established" requirement in qualified immunity cases, reasoning that an FCRA violation can only be willful if the defendant engages in conduct that is clearly unlawful under then-existing law.  *Id.* at 69-70.  *Safeco* itself makes clear that this "clearly established" test sets a very high bar for willfulness liability.  Even federal district court case law and informal agency guidance do not suffice to make an FCRA interpretation "clearly established" under *Safeco*; rather, only "court of appeals" authority, "authoritative guidance" from the Federal Trade Commission, or statutory language that is "pellucid" satisfy this test.  *Id.*  Accordingly, unless the defendant's alleged conduct would not have been lawful under any interpretation of the FCRA that "could reasonably have found support in the courts," the willfulness claim must fail.  *Id.* at 70 n.20.

This standard thus protects misreadings of the FCRA so long as they are "objectively reasonable," much in the same way that qualified immunity protects officials from liability if their "action[s] w[ere] reasonable in light of legal rules that were 'clearly established' at the time."  *Safeco*, 551 U.S. at 70 (citing and describing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  And there are "numerous . . . cases in which courts have applied Safeco and declined to hold

defendants liable absent evidence of a reckless approach to FCRA compliance." *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 254 (3d Cir. 2012).

### 2.   Plaintiff's Allegations Do Not Rise to the Level of a Knowing or Reckless Violation; He Does Not Allege a Violation at All.

The allegations in the SAC do not come close to establishing that Defendants violated "pellucid" guidance from the appellate courts and the FTC.  Indeed, the most relevant guidance from appellate courts and the FTC is *contrary* to the theory of liability alleged in Plaintiff's Complaint.

According to the SAC, Defendants might maintain "obsolete and archived information" of the sort contained in Plaintiff's LexisNexis disclosure.  ECF No. 50 ¶ 36.  Plaintiff alleges that while Defendants sent him a full copy of his "credit report," he was entitled to additional "obsolete and archived information" as part of his full consumer file disclosure.  *Id.* ¶ 25.  The premise of Plaintiff's Complaint is that so long as a consumer reporting agency maintains *any* form of information on the consumer that it fails to disclose upon request, a violation of § 1681g(a)(1) is stated.  But that theory has been categorically rejected.

In *Gillespie v. Trans Union Corp.*, 482 F.3d 907 (7th Cir. 2007), the Plaintiff alleged that a consumer reporting agency violated § 1681g(a)(1) by providing her with a consumer report that revealed delinquent account information but omitted any mention of the purge date.  *Id.* at 908.  Trans Union maintained this purge date—*i.e.*, the date when negative information is to be removed issued reports—in its files, but did not include this information on the consumer reports it sends to third parties.  *Id.*

The plaintiff argued that because § 1681g(a)(1) states that a consumer reporting agency must disclose "*[a]ll* information in the consumer's file," the statute requires disclosure

everything in the consumer's file, and not just material included in a consumer report issued to third parties. *Id.* The Seventh Circuit disagreed, for several reasons.

First, while § 1681g(a)(1) requires CRAs to disclose all information in the consumer's file, subsequent paragraphs in § 1681g(a) "list other types of information that must be revealed as well," including the name of each person that received a consumer report, and a record of all credit inquiries during the one-year period before the consumer's request. *Id.* at 909. If § 1681g(a)(1) required disclosure of all information on the consumer recorded and retained by a CRA, "then these additional paragraphs are unnecessary." *Id.*

Second, the FTC's commentary on § 1681g(a)(1) limits the scope of the provision to material included in a consumer report, *i.e.*, the report generated and delivered to third parties for use in deciding whether the consumer is eligible for credit or other purposes. *Id.* (citing 16 C.F.R. pt. 600, app. § 603 ("The term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer.").[5]

Third, legislative history underlying § 1681g(a)(1) indicates that Congress enacted the statute to ensure that consumers receive "complete copies of their consumer reports, not their entire files in whatever form maintained by the CRA." *Id.* (citing S. Rep. No. 104-185, at 41 (1995) ("Section 408 explicitly requires consumer reporting agencies to provide, upon request, all information in the consumer's file. The Committee intends this language to ensure that a

---

[5] In 2010, Congress transferred authority for the interpretation of the FCRA from the FTC to the Consumer Financial Protection Bureau. *See* Dodd-Frank Wall Street Reform & Consumer Protection Act, Pub. L. No. 111-203 § 1088, 124 Stat. 1376. But the CFPB has not issued any contrary interpretation, and the existence of the FTC's commentary bears on whether defendants willfully violated the FCRA.

consumer will receive a copy of that consumer's report, rather than a summary of the information contained therein.")).

Based on the foregoing, the Seventh Circuit held that the term "file," as used in § 1681g(a)(1), "denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Id.* at 909. "Congress, it seems, chose to limit the right to contest information to material *actually contained in consumer reports*. And of course it was free to draw the line as it did." *Id.* at 910 (emphasis added); *see also Rumbough v. Comenity Capital Bank*, 2017 WL 5714254, at *3 (M.D. Fla. Nov. 27, 2017) (same). Thus, unless the plaintiff makes "some showing" that the CRA has failed to disclose information contained in a consumer report, a claim under § 1681g(a)(1) fails. *Gillespie*, 482 F.3d at 909; *see also* Dee Pridgen & Richard M. Alderman, *Consumer Credit & the Law* § 2:16 (Nov. 2017) ("the FCRA does not require consumer reporting agencies to disclose information that is not given to creditors who request credit reports").

The allegations in the SAC do not plausibly allege that Defendants knowingly or recklessly violated any of this guidance. Plaintiff complains that the disclosure made by defendants did not include "obsolete and archived" information. ECF No. 50 ¶ 36. But § 1681g(a)(1) expressly limits a CRA's disclosure to information in the consumer's file—*i.e.*, information included in a consumer report, *Gillespie*, 482 F.3d at 910—"at the time of the request." And Plaintiff concedes that he received all the information that would be provided to third parties in a consumer report. *See* ECF No. 50 ¶ 25.

Under the circumstances, Defendants' "decision not to list [obsolete and archived] information in its consumer disclosures was not objectively unreasonable because the only

relevant guidance dictated that consumers are entitled to 'complete copies of their consumer reports, not their entire files in whatever form maintained by the CRA.'" *Shaw v. Experian Info. Solutions, Inc.*, 891 F.3d 749, 761 (9th Cir. 2018).[6]

## V.   <u>CONCLUSION</u>

For these reasons, Defendants' Motion to Dismiss should be granted.

Dated: July 27, 2018                           Respectfully submitted,


                                               *s/ Erika S. Whyte*
                                               _____
                                               Erika S. Whyte
                                               Florida Bar No. 91133
                                               JONES DAY
                                               600 Brickell Avenue
                                               Suite 3300
                                               Miami, FL  33131
                                               Telephone:   +1.305.714.9700
                                               Facsimile:   +1.305.714.9799
                                               E-mail:      ewhyte@jonesday.com

                                               *Attorneys for Defendant*
                                               *Experian Information Solutions, Inc.*

---

[6] Although the Eleventh Circuit has not yet considered the question presented by cases like *Gillespie* and *Shaw*, there is no contrary authority within this circuit.  One case within this circuit has concluded that *Gillespie* is contrary to the Eleventh Circuit's decision in *Nunnally v. Equifax Information Services, LLC*, 451 F.3d 768 (11th Cir. 2006).  *See Morris v. TeleCheck Servs., Inc.*, 2008 WL 11422604, at *4 (N.D. Ala. Sept. 23, 2008).  That court is mistaken.

In *Nunnally*, the Eleventh Circuit distinguished between the type of "consumer report" required after a CRA reinvestigates a disputed item (*see* 15 U.S.C. § 1681i(a)(6)(B)(ii)), and the file disclosure required by § 1681g(a)(1).  The court held that following a reinvestigation, the CRA need only inform consumers of the changes made to their file as a result of the reinvestigation, and need not provide a more fulsome disclosure that contains other information.  *See Nunnally*, 451 F.3d at 776.  But the court never considered the type or extent of information that must be disclosed under § 1681g(a)(1), or whether CRAs must disclose more than is provided in the type of consumer reports issued to third parties, such as potential creditors pursuant to 15 U.S.C. § 1681g(d)(1).  *Nunnally* cannot fairly be interpreted as binding on an issue it never actually decided.  *See United States v. Caraballo-Martinez*, 866 F.3d 1233, 1244 (11th Cir. 2017).

Dated: July 27, 2018                    Respectfully submitted,


                                        *s/ J. Anthony Love*
                                        J. Anthony Love
                                        Florida Bar No. 67224
                                        KING & SPALDING LLP
                                        1180 Peachtree Street, N.E.
                                        Atlanta, GA 30309
                                        Telephone:    +1.404.572.4600
                                        Facsimile:    +1.404.572.5100
                                        E-mail:       tlove@kslaw.com

                                        *Attorneys for Defendants*
                                        *Equifax Inc. & Equifax Information*
                                        *Services LLC*


Dated: July 27, 2018                    Respectfully submitted,


                                        */s Franklin G. Cosmen, Jr.*
                                        Franklin G. Cosmen, Jr.
                                        Florida Bar No. 89214
                                        QUINTAIROS, PRIETO, WOOD &
                                        BOYER P.A.
                                        9300 S. Dadeland Blvd., 4th Floor
                                        Miami, FL  33156
                                        Telephone:    +1.305.670.1101
                                        Facsimile:    +1.305.670.1161
                                        E-mail:       fcosmen@qpwblaw.com

                                        *Attorneys for Defendant*
                                        *Trans Union LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2018, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that I served a true and correct copy of the foregoing document on all counsel or parties of record on the service list via transmission of Notices of Electronic Filing generated by CM/ECF.  I further certify that I served a true and correct copy of the foregoing document by mail to the Plaintiff at the following address:

> James W. Scott
> jwsscott777@gmail.com
> 3457 Deercreek Palladian Circle
> Deerfield Beach, FL 33442
> 954-540-0408
> *Pro Se Plaintiff*

> */s/ Erika S. Whyte*
> Erika S. Whyte