## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**JAMES W SCOTT**
       *Plaintiff.*

**CASE 18-CV-60178-ALTONAGA/SELTZER**

**vs**

**EXPERIAN INFORMATION
SOLUTIONS, INC.; TRANS UNION
LLC; EQUIFAX, INC.; EQUIFAX
INFORMATION SERVICES, LLC**
       *Defendants*

_____/

FILED BY _____ D.C.

AUG 1 3 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## PLAINTIFF'S RESPONSE IN OPPOSITION AND MEMORANDUM TO DEFENDANTS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Comes now the Plaintiff, James W. Scott, who hereby submits his Response in

Opposition to Trans Union LLC, Equifax Information Services, LLC, Equifax, Inc., and

Experian Information Solutions, Inc.'s ("Defendants") Motion to Dismiss the Second Amended

Complaint ("SAC") and states as follows:

### I.    Introduction

This lawsuit arises from the Defendants' uniform violation of 15 U.S.C. § 1681g(a)(1)

of the Fair Credit Reporting Act ("FCRA"), which requires consumer reporting agencies to

"clearly and accurately disclose" to a requesting consumer "[a]ll information in the consumer's

file at the time of the request." 15 U.S.C. § 1681g(a)(1). The Plaintiff did not ask for a credit

report, a credit score, risk score, predictors or other things relating to the processes and

procedures of how Defendants create reports, maintained, analyzed or disseminates information

relating to him or its customers. James W Scott simply requested a **full consumer file disclosure**

of what the Defendants were in possession of in any form or in any place that relates specifically

to him as a consumer. *See Exhibits 1 & 2* from SAC. It was a very straightforward request made

under the law. In response to Plaintiff's multiple requests, Defendants failed to comply with that

1

request.

In the present motion, the Defendants move the Court to dismiss the Second Amended Complaint for two overarching reasons. First, Defendants contend that Plaintiff lacks standing because Plaintiff's primary harm—his "informational injury"—is not sufficient for the purpose of Article III standing. Defendants argument is based on a misreading of the Supreme Court's decision in *Spokeo v. Robins*, __ U.S. __. 136 S. Ct. 1540 (2016). *Spokeo* simply reiterated that, to have standing, a plaintiff must show an injury that is *both* particularized *and* concrete. In doing so, *Spokeo* reaffirmed well-established Article III – standing principles ---that "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm." *Id.* at 1549. Relying on this guidance from *Spokeo,* the Federal Court in Virginia recently rejected a similar Challenge in an FCRA case, holding: "where a consumer alleges, as [plaintiff] has here, that he or she has received a disclosure that does not satisfy those requirements, the consumer has alleged a concrete informational injury." *Thomas v. FTS USA, LLC,* 2016 WL 3653878 at*10 (E.D. Va. June 30, 2016) (Payne, J.) Applying those principles here makes clear that Plaintiff has Article III standing.

Second, Defendants contend that nothing in the SAC shows that Defendants "willfully" violated the FCRA. This is objectively false. As shown by the SAC and the included exhibits, Plaintiff has alleged that Defendants knew of their legal obligations but consciously refused to comply with § 1681g(a)(1) although they had the written requests sent to them by the Plaintiff, which apprised them of their duties, and did so intentionally and purposefully in conformity with their established and systemic procedures and policies. Rather than conclusory, the allegations provide evidentiary detail of precisely what Plaintiff will prove and gives Defendants more than the required "fair notice of what the claim is and the grounds upon which it rests." *Stout v. Meletis, supra,* 2012 WL 618688,*1, quoting *Bell Atl. Corp. v. Twombley,* 550 U.S. 544, 555 (2007), and *Conley v. Gibson,* 355 U.S. 41, 47 (1957). An allegation that "a defendant was aware

of the FCRA, but failed to comply with its requirements, [is] sufficient to support an allegation of willfulness and to avoid dismissal." *Singleton v. Domino's Pizza, LLC,* 2012 WL 245965,*4 (D. Md. Jan. 25, 2012) (citations omitted).  Defendants were required to comply with FCRA § 1681g(a)(1). The SAC alleges that they did not do so. The Defendant's Motion should be denied.

## <u>STANDARD OF REVIEW</u>

Courts view Rule 12(b)(6) motions with disfavor. Brooks v. Blue Cross & Blue Shield of Fla.,Inc.,116 F.3d 1364, 1369 (11th Cir. 1997) ("We hasten to add that [a 12(b)(6) motion] is viewed with disfavor and rarely granted.").  A complaint should be upheld  if it is "supported by [a] showing  [of] any set of facts consistent  with the allegations in the complaint." Bell    Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007). When considering a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff. Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008). Additionally, when considering a motion to dismiss the court should consider the plaintiff 's allegations  as true. Hill v. White, 321 F.3d. 1334, 1335 (11th Cir. 2003).

As courts throughout Florida have consistently held, Twombly and Iqbal do not change the fundamental analysis that a district court engages in when ruling on a motion to dismiss, i.e., accepting all plausible allegations as true and determining whether the complaint contains ,,a short and plain statement of the claim showing that the pleader is entitled to relief."" Smith v. Wm. Wrigley Jr. Co., 663 F.Supp.2d 1336, 1341 n. 3 (S.D. Fla. 2009). The issue for consideration on a motion to dismiss is not whether the Plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims. "Little v. City of North Miami, 805 F.2d. 962, 965 (11th Cir. 1986).

## **ARGUMENT**

### A.  **The Second Amended Complaint Fails to State a Plausible Claim For Relief.**

Defendants misapply the standard applicable to Rule 12(b)(6) motions, re-cast Plaintiff's theory of their liability stated in the SAC in order to disregard the aspects that are contrary to their purported defenses, ignore specific factual allegations that refute their current contentions, and assert other facts that are outside the pleadings. They also misconstrue the Fair Credit Reporting Act (FCRA). Their preemptive use of Rule 12(b)(6) is both baseless and premature, and the motion to dismiss must therefore be denied.

Contrary to Defendants' arguments, the SAC states a claim for relief for Defendants' willful violation of 15 U.S.C. § 1681g(a)(1). Defendants cite *Twombly*, 550 U.S. at 570 and *Iqbal*, 556 U.S. at 678 in an attempt to contend that Plaintiff never alleged any facts to support his claim. This was stated clearly in the SAC at (ECF 50 at 35-37, 39). Defendants also cite *Larson v. Trans Union, LLC,* 2014 WL 1477705, at*4 (N.D. Cal. Apr. 14, 2014) and *Parker v. Equifax Info. Servs., LLC,* 2017 WL 4003437,at*4 (E.D. Mich. September 12, 2017) in attempt to dissuade this Court that the Plaintiff's pleadings are nothing more than assumptions which cannot access discovery. The *Parker* case was primarily about who was given access to the plaintiff's credit information and the *Larson* case was similar yet the district judge in the Larson case stated: "I agree with Larson that his section 1681g(a) claim is based on something more than a "bare procedural violation" ….to the contrary, his claim is based on the sort of "informational" injury that the *Spokeo* Court implicitly recognized." *Id.*

Even if this Court were authorized under Rule 12(b)(6) to issue the non-dispositive opinion that Defendants seek holding that § 1681g(a)(1) does not apply to them, their argument is

precluded by the plain statutory language and the well-plead allegations in the
SAC.

1. **Plaintiff Fails to Explain How the Alleged LexisNexis Documents Are Related to the Consumer Disclosures He Received.**

In this argument, the Defendants are confused as to how the alleged LexisNexis

documents are related to the consumer disclosures he received from them. First off, as

Plaintiff clearly stated in his SAC, the information that he received from LexisNexis which

was a full disclosure of his file, included items of obsolete and archived information, among

other things. (ECF No. 50 at 35, 36, and 37). Secondly, the pure factual basis of what Plaintiff

alleged was sufficient to satisfy the basic Rule 8 pleading standards for all Federal Courts.

The documents received form Defendants, stated as "credit/consumer reports," did not

include specifically the past addresses which the LexisNexis full file disclosure provided.

*See Exhibit A and B*. From just a cursory review, it can be factually seen that two of the

Defendants in this case provided to LexisNexis, information as per Plaintiff's past addresses

which were not included in the "reports" that they sent to Plaintiff when he requested his

full consumer file disclosure on two occasions. This is a specific fact contrary to the spirit

of 15 U.S.C. § 1681g(a)(1). The Defendants' motion should be denied.

2. **Plaintiff Fails to Show any Item in His Equifax Credit File was Excluded From the Consumer Disclosures He Received.**

Next up, the Defendants contend as in the previous argument that Plaintiff has failed to plead

factual content that Equifax is liable for violating § 1681g(a)(1). Since the Defendants cite *Day v.*

*Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) and introduced the referenced documents in their

Exhibit 1., we can clearly see that in this case, the Plaintiff properly plead an undeniable fact, and the

Defendants attempt to cover their tracks by citing 15 U.S.C. §1681c(a) along with Equfax's link to

their website which explains how information on a "credit report" drops off after approximately ten

years. The referenced document in question here, is from a Snap-On tradeline that belonged to

Plaintiff. The Defendants state in this argument "Thus, the consumer disclosure provided to him by Equifax would not have included the Snap-On Credit tradeline because it no longer appeared in his Equifax credit file." If the Plaintiff had requested a "credit report" from Defendants, then this instant case would have never been filed because the Plaintiff is fully aware of the FCRA's requirements as it pertains to "credit reports." Plaintiff instead requested specifically a copy of his **full consumer file disclosure** which constitutes "ALL" information in his file as opposed to the partial information which a "credit report" contains. Why is it that on July 10, 2018, Equifax was able to send this information to Plaintiff when they state that on September 20, 2017, that information no longer appeared in his Equifax credit file? In addition, why would a smaller CRA such as LexisNexis have in their database, addresses supplied by Equifax and Experian specifically, which belonged to the Plaintiff and never given to Plaintiff when he requested it from Defendants in his **full consumer file disclosure?** The Defendant's motion should be denied.

B.   **Plaintiff Lacks Standing Because the Second Amended Complaint Does Not Allege a Concrete Injury.**

The Defendants now contend that "The required Article III injury is lacking here, because there is no factual allegation suggesting that Plaintiff has been affected even slightly by the alleged violation." They cite several cases to bolster their argument, which include: *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), *Dreher v. Experian Info. Sols., Inc.*, 856 F. 3d 337 (4th Cir. 2017), *Friends of Animals v. Jewell*, 828 F. 3d 989, 992 (D.C. Cir. 2016), *Stacy v Dollar Tree Stores, Inc.*, 274 F. Supp. 3d 1355, 1363 (S.D. Fla. 2017), *Lyshe v. Levy*, 854 F.3d 855, 860 (6th Cir. 2017) and *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992).

Contrary to the Defendants' position, *Spokeo* did not change the basic requirements of standing.[1] Indeed, the Supreme Court reaffirmed that a plaintiff must have "(1) suffered an injury in

---

[1] Defendants drastically exaggerate the impact of *Spokeo* . Both commentators and courts have recognized that none of the principles set forth in *Spokeo* are new. *In re Nickelodeon Consumer Privacy Litig.*, ___F.3d___, 2016 WL 3513782, at*7 (3d. Cir. June 27, 2016) (noting that *Spokeo* did not change Article III standing analysis); *Thomas*, 2016 WL 3653878, at*5

fact, (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Both sides agree that a Plaintiff must show that they suffered a "concrete injury" and that means that a consumer must show that the violation has caused them "harm" or "risk of harm." It is at that point that the understandings depart. For Defendants, "harm" means the same thing as "actual damages." In other words, Defendants believe that *Spokeo* means that a consumer must show actual damages from the violation. In this instance, that the consumer could have reviewed, disputed and corrected inaccurate information but for the violation.

No court has agreed with the Defendants. The handful of post-*Spokeo* cases they do offer do not hold as the Defendants argue. By contrast, a majority of the other cases[2] —where *Spokeo's* guidance was actually considered—follow the same reasoning of this Court in *Thomas*—in order for a statutory violation of a procedural requirement to be "substantive," Congress or common law has to have recognized the violation of such a procedural requirement to have substantive import. Thus, as explained more completely by Judge Payne in *Thomas*[3], Congress recognized several "harms" that

("*Spokeo* did not change the basic requirements of standing."); *Mey v. Got Warranty, Inc.*, 2016 WL 3645195, at *2 (N.D.W. Va. June 30, 2016) ("*Spokeo* appears to have broken no new ground.").

[2] *Dickens v. GC Services. Ltd. P'ship*, 2016 WL 3917530, at *2 (M.D. Fla. July 20, 2016) ("When the plaintiff alleged that the defendant failed to provide information she was entitled to receive, the Court concluded, she alleged a congressionally elevated cognizable injury. She alleged, in other words, a concrete injury." (internal citations omitted); *Church v. Accretive Health, Inc.*, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) ("Thus Church has sufficiently alleged that she has sustained a concrete— i.e., 'real'—injury because she did not receive the allegedly required disclosures. The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled."); *Mclaughlin v. Wells Fargo Bank, NA*, 2016 WL 3418337, at *5 (N.D. Cal. June 22, 2016) ("The inaccuracy here is in no way akin to an inaccurate zip code. The bank's effort to downplay the harm done by an inaccurate payoff statement is unconvincing."); *Lane v. Bayview Loan Servicing, LLC*, 2016 WL 3671467, at *4 (N.D. Ill. July 11, 2016) ("The information-access cases cited by *Spokeo* suggest that, in this case, Lane has alleged a sufficiently concrete injury because he alleges that Bayview denied him the right to information due to him under the FDCPA."); *Jaffe v. Bank of Am., N.A.*, 2016 WL 3944753, at *4 (S.D. N.Y. July 15, 2016) ("The State Legislature has provided a private right of action and a heuristic for quantifying damages, possibly in recognition of both the concreteness of this harm and the difficulty in otherwise measuring damages. The types of harm the statutes protect against are real. Because to the public, these mortgages appeared not to have been satisfied, plaintiffs could have realized that harm if they had, for example, tried to sell or encumber the subject property, or tried to finance another property and been subjected to a credit check. Whether such harm actually was realized is of no moment, because a plaintiff 'need not allege any additional harm' beyond the violation of the statutory right.")

[3] "At the same time, the Court observed that, in cases where "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient. . .[and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." "In sum, then, the proposition that "[t]he... injury required by Article III may exist soley by virtue of 'statutes creating legal rights, the invasion of which creates standing'" survives *Spokeo* subject to qualification, depending on the facts of each case and the considerations articulated above, but nevertheless intact. With those

occur when a FCRA requirement is violated. A consumer need not prove any more harm than that.

Despite the Defendant's best efforts to quote the decision out of context, *Spokeo* has done very little to change the law; it simply summarizes the standing doctrine and provides examples of injuries that might (or might not) constitute sufficiently concrete harms. More importantly, *Spokeo* unquestionably supports Plaintiffs as *Spokeo* expressly recognized that the deprivation of information subject to disclosure under a federal statute "constitutes a sufficiently distinct injury to provide standing to sue." *Spokeo*, 136 S. Ct. at 1549 (citing *Public Citizen*, 491 U.S. at 449; *Akins*, 524 U.S. at 24-25 (1998).

Surprisingly the Defendants emphasize in great detail how the Fourth Circuit applied *Spokeo* to a claim under §1681g—the same FCRA provision at issue here—in *Dreher v. Experian Info. Sols., Inc.,* 856 F.3d 337 (4th Cir. 2017). The Plaintiff agrees with Defendants as to what they presented in terms of "informational injury" which according to the Fourth District, can constitute an Article III injury-in-fact, but does not unless the plaintiff lacks "access to information to which he is legally entitled *and*... the denial of that information creates a 'real' harm with an adverse effect." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549). Defendants also cite: *Stacy v. Dollar Tree Stores, Inc.*, 274 F. Supp. 3d 1335, 1336 (S.D. Fla. 2017) "Stacy's case does not fit the informational injury mold. Unlike Church, she was not deprived of any information to which she was legally entitled."; and *Lyshe v. Levy*, 854 F.3d 855, 860 (6th Cir. 2017) "the procedural violation alleged here—a violation of a state law procedure not required under FDCPA—is not the type contemplated by *Spokeo*."

Plaintiff in this instant case has been deprived of information to which he was legally entitled to. In *Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014) (observing that "[t]he Supreme Court consistently has held that a plaintiff suffers an Article III injury when he is denied information that must be disclosed pursuant to a statute"); *Heartwood v. U.S. Forest Serv.*, 230 F. 3d 947, 952 n.5 (7th

principles in mind, it is necessary, as *Spokeo* instructs, to look to the common law and to the judgment of Congress, as reflected in the FCRA, to determine whether the violations of that statute alleged by Thomas constitute concrete injuries that satisfy the case or controversy requirement." *Thomas*, 2016 WL 3653878, at *5-6 (internal citations omitted).

Cir. 2000) (finding "cognizable injury-in-fact" for plaintiffs Who were deprived of information

required to be disclosed by statute). Defendant's argument beyond the deprivation of information.

(Def.'s Mem. at page 15, pg. 2) ("Plaintiff has failed to allege that he has suffered any "real" harm

in the form of an inaccurate or unfair credit report.") Far from it—Defendant's violation resulted in

precisely the type of informational injury specifically recognized by the Supreme Court in *Spokeo*.

## C.   The Second Amended Complaint Does Not Allege That Defendants Willfully Violated the Fair Credit Reporting Act.

The allegations of the SAC are evaluated by "the familiar standard fir a motion to dismiss

under Fed.R.Civ.P.12(b)(6)." *Stout v. Meletis*, 2012 WL 618688, \* 1 (E.D. Va. Feb. 24, 2012). The

Plaintiff has alleged that the Defendants were aware of what their responsibilities were in connection

with Plaintiff's request for his full consumer file disclosure throughout SAC. "An allegation that "a

defendant was aware of the FCRA, but failed to comply with its requirements, [is] sufficient to

support an allegation of willfulness and to avoid dismissal.

### 1.   Under the FCRA, Willfulness is a High Standard that Requires a Knowing or Reckless Violation.

The FCRA's notice provisions, including §1681g(a), are the foundation of consumer

oversight on which FCRA compliance is built. The notices that Congress included in the FCRA

provide consumers with the information necessary to inform and then engage in self-help. Disclosure

of the consumer's file is an essential first step to handling almost any problem relating to whether

there is inaccurate or incomplete information. To understand the nature of negative information in

the file also is an aid to improving the consumer's credit profile. *Gillespie v. Equifax Info. Servs.*,

LLC. 484 F.3d 938, 941 (7th Cir. 2007) ("A primary purpose of the statutory scheme provided by the

disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit

files and correct this information via the grievance procedure established under § 1681i") *see also*

*Mourning v. Family Pub. Serv., Inc.*, 411 U.S. 356, 364 (1973) ("[B]lind economic activity is

inconsistent with the efficient functioning of a free economic system such as ours.") Only the Defendant's compliance with § 1681g(a) would provide James W. Scott and all other such consumers with that indispensable information as Congress has directed.

Defendant's explanation of the FCRA's "willfulness" standard is incomplete. Defendants cite *Berry v. Schulman*, 807 F. 3d 600, 605 (4th Cir. 2015) and *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007) "[W]illfulness is a high standard, requiring knowing or reckless disregard Of the FCRA's requirements and "*Safeco* itself makes clear that this "clearly established" test sets a very high bar for willfulness liability." This is inaccurate. *Safeco* and *Berry* considered only a subset of "willfulness" measures and established a willfulness threshold that was "less stringent than the standard" that previously existed in the Fourth Circuit. *Mullins v. Equifax Info. Serv., LLC*, WL 2471080, *2 (E.D. Va. Aug. 27, 2007). Nevertheless, and irrespective of whether James W. Scott establishes a claim for willfulness under the conscious disregard standard, Defendants cannot establish a reckless disregard defense as a matter of law to show that its misinterpretation of § 1681g (a)(1) is not "objectively unreasonable." The FCRA's phrase "All information" is facially pellucid. "Unlike in *Safeco*, where the FCRA provision at issue was "less-than-pellucid," 551 U.S. at 70, the text at issue here appears to have "a plain and clearly ascertainable meaning[.]" *Singlton v. Domino's Pizza, LLC*, 2012 WL 245965 (D. Md. Jan. 25, 2012) (citations omitted). "Where 'the text of [the] statute is clear and open to only one reasonable interpretation... a dearth of guidance does not render [a] defendant's readings plausible.'" *Id.* (citations omitted). *See also Smith v. HireRight Sols., Inc.*, 711 F. Supp. 2d 426, 436 (E.D. Pa. 2010) ("[Q]uite unlike *Safeco*, where the statute at issue was "less-than-pellucid" and there was a "dearth of guidance," *id.* At 70, the statutory text at issue here has a plain and clearly ascertainable meaning.") In interpreting a statute, the Court first determines "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004) (citations omitted). In *Johnson*, the Fourth Circuit considered the meaning of the FCRA word "investigation"

and found **that** word to have a plain and common meaning. *Id.* The phrase "All Information," in the context used in the statute itself, is certainly at least as clear.

### 2. <u>Plaintiff's Allegations Do Not Rise to the Level of a Knowing or Reckless Violation; He Does Not Allege a Violation at All.</u>

The Defendants state that the allegations in the SAC do not come close to establishing that they violated "pellucid" guidance from the appellate courts and the FTC. Once again, *Safeco* considered and resolved a then-Circuit split as to the question of whether or not FCRA "willfulness" could include "reckless" violations, or instead solely those that were made "knowingly" and/or with "conscious disregard." The Supreme Court held in *Safeco* that § 1681n willfulness "cover[s] not only knowing violations ... but reckless ones as well." 551 U.S. at 48. Defendants ignore this portion of the *Safeco* opinion, and as a result their willingness argument misquotes and certainly misunderstands the importance of *Safeco.*

The pre-*Safeco* majority rule, adopted in the Forth Circuit, required evidence for a plaintiff to "show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer." *Dalton,* 257 F.3d at 418 (citations omitted). On the other hand, at least two Circuits allowed proof that a violation was merely "reckless." Shortly after *Safeco* was decided, the Fourth Circuit held an FCRA plaintiff may prevail under either the pre-*Safeco* knowing or "conscious disregard" standard or the lower-threshold "reckless disregard" test. *Saunders v. Branch Banking & Trust Co.* 526 F.3d 142, 151 (4th Cir. 2008).

The plain language of the FCRA requires, among other obligations, that CRAs "clearly and accurately disclose" to a requesting consumer "[a]ll information in the consumer's file at the time of request." 15 U.S.C. § 1681g(a)(1). The United States of Appeals for the Seventh Circuit has found that "[t]he term 'file' denotes **all information** on the consumer that is recorded and retained by a consumer reporting agency *that might be furnished, or has been furnished, in a consumer report on that consumer." Gillespie v. Trans Union Corp.,* 482 F.3d 907, 909 (7th Cir. 2007)

(emphasis in original) (citing 16 C.F.R. pt. 600, app. § 603). Defendants cite *Gillespie* in their argument stating Federal Courts and the FTC have limited scope of the term "file" to all information on the consumer included in a consumer report that would be sent to a third party. The flaw in using this argument again in this case is that it is taken out of context and misinterpreted as well as an incomplete statement. Defendants again try to shift the focus from off of what the Plaintiff has requested in this case, a full consumer file disclosure, to that of only the limited information that they have in the form of a basic credit report. *Gillespie* cites the FTC's commentary on § 1681g(a)(1) regarding the limited scope of the term "file": "The term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that **might** be furnished, or **has** been furnished, in a consumer report on that consumer." *Id.* At 909 (quoting 16 C.F.R. pt. 600 app. § 603). (Emphasis added).

The United States Court of Appeals for the Third Circuit has ruled that a CRA may not evade disclosure requirements by, for example, "contracting with a third part to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report." *Cortez v. Trans Union, LLC.* 617 F.3d 688, 711 (3d Cir. 2010), or by using "[c]orporate organization, reorganization, structure, or restructuring." To circumvent reporting requirements. 12 C.F.R. § 1022. 140(a). *Jones v. Equifax* No. 3:15-cv-112-RJC-DSC United States District Court, W.D. North Carolina, Charlotte Division April 11, 2016. Defendant's argument has no merit when looking at the plain language of the statute and case law.

Defendants cite *Rumbough v. Comenity Capital Bank*, 2017 WL 5714254, at * 3(M.D. Fla. Nov. 27, 2017) and Dee Pridgen & Richard M. Alderman, *Consumer Credit & the Law* § 2:16 (Nov. 2017) which clearly do not have any connection with this case at hand. In the Rumbough case, the plaintiff asked for all the information according to § 1681g(a)(1) among other things. However, "in response to Rumbough's request for information in his consumer file, Trans Union unequivocally informed Rumbough that it no longer maintains a commercially available credit file

for him and cannot fulfill his request.  Plaintiff has never received words of that effect from any of the Defendants in this instant case. In any event, the SAC alleges quite pointedly that they have information in their files that they have refused to disclose to Plaintiff including, older tradelines and archived addresses. Not to mention LexisNexis who is not even a party to this case, has shown to follow the requirements of the FCRA to the letter. As was stated in past arguments, why did the Defendants in this case, not disclose to Plaintiff that they no longer have any information in their files that pertain to him as Trans Union did in the *Rumbough* case?

Defendants also contend that "Plaintiff concedes that he received all the information that would be provided to third parties in a consumer report." All Plaintiff stated in the SAC at pg. 25 was that he received a "credit report" which was not responsive to his request. Defendants state as well "Under the circumstances, Defendants' "decision not to list [obsolete and archived] information in its consumer disclosures was not objectively unreasonable because the only relevant guidance dictated that consumers are entitled to 'complete copies of their consumer reports, not their entire files in whatever form maintained by the CRA.'" *Shaw v. Experian Info. Solutions, Inc.*, 891 F. 3d 749, 761 (9th Cir. 2018). As was the true understanding of this case, the plaintiffs were seeking ancillary information like "special codes" which were not clear to the average consumer.

The question upon which the Defendants claim to have needed guidance would be infinitely regressive. Even if there were such ridiculously precise guidance as to what denotes "All" information when a consumer requests his or her full consumer file disclosure, the Defendants would argue something else to regress themselves out of FCRA enforcement. Given the "very high legal duties of care" imposed on consumer reporting agencies by the statute, the "critical role that the CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information," the Court should not view Defendants' excuses with a patient, passive or casual eye. *Burke v. Experian Info. Sols., Inc.*, 1:10-CV-1064, 2011 WL 1085874 (E.D. Va. Mar. 18, 2011).

## CONCLUSION

As has been fully argued, the Defendants' know full well of the requirements of the FCRA and how it pertains to this case. They also know whether they have any information in their files that relates to James W. Scott, not only including the Snap-On tradeline and archived addresses, that was not disclosed to him after his request. The fact that they did not state categorically that they do not have additional information relating to James W. Scott as a consumer in their files in their motion to dismiss would leave a reasonable person, including this Court, to reasonably assume there is more information and that this case should go forward based on the merits. Plaintiff has barely had enough time to respond to the three Defendants' joint motion to dismiss in this case, even though he as a *pro se* had requested an unopposed extension of time adequately respond.

**WHERFORE,** because the Defendants have failed to bring any cognizable or legitimate arguments for dismissal before this Court, Plaintiff respectfully requests this Court to deny Defendants' motion to dismiss and allow Plaintiff's claim to move forward to trial on the merits. In the event the Court finds that the Plaintiff has failed to state a claim as alleged by Defendants, Plaintiff requests leave of this Court to Amend the Complaint.

Dated: August 13, 2018

Respectfully Submitted By,

James W Scott
3457 Deercreek Palladian Circle
Deerfield Beach, Fl 33442
954-540-0408 / Cell
Jwsscott777@gmail.com

14

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2018, I filed the foregoing document with the Clerk of the Court. I also certify that the foregoing document is being sent via certified mail to Defendants.

James W Scott

## SERVICE LIST

Franklin G. Cosmen, Jr.
Quintairos, Prieto, Wood & Bower P.A.
9300 S. Dadeland Blvd, 4th Floor
Miami, Florida 33156
Telephone: 305-670-1101
Email: fcosmen@qpwblaw.com
Counsel for Trans Union

John Anthony Love
King & Spalding
1180 Peachtree Street NE
Atlanta, GA 30309
404-572-4600
tlove@kslaw.com
Counsel for Equifax

Erika S. Handleson
Florida Bar No. 91133
Jones Day
600 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone:  (305) 714-9700
Facsimile:   (305) 714-9799
ewhyte@jonesday.com
*Counsel for Defendant*
*Experian Information Solutions, Inc.*

# EXHIBIT A

| Reference Number: N/A | Consumer Number: 12642635 | Case Number: 94715905 | Document Date: 5/4/2018 |
|---|---|---|---|

| Composite Address | 3921 NW 67TH TER | Phone | |
|---|---|---|---|
| City, State, Zip | HOLLYWOOD, FL 33024-1801 | Date First Seen | 199206 |
| Date Of Birth | 19680700 | Date Last Seen | 199206 |
| Source | EQUIFAX 1010 WASHINGTON AVENUE STAMFORD, CT 06901 (770) 740-4940 | | |

| Full Name | JAMES W SCOTT | SSN | |
|---|---|---|---|
| Composite Address | 2283 N SHERMAN CR B 412 | Phone | |
| City, State, Zip | HOLLYWOOD, FL 33025 | Date First Seen | 199202 |
| Date Of Birth | 19680700 | Date Last Seen | 199202 |
| Source | EQUIFAX 1010 WASHINGTON AVENUE STAMFORD, CT 06901 (770) 740-4940 | | |

| Full Name | JAMES W SCOTT | SSN | |
|---|---|---|---|
| Composite Address | 2281 S SHERMAN CIR APT | Phone | |
| City, State, Zip | MIRAMAR, FL 33025-2295 | Date First Seen | 199110 |
| Date Of Birth | 19680700 | Date Last Seen | 199112 |
| Source | EQUIFAX 1010 WASHINGTON AVENUE STAMFORD, CT 06901 (770) 740-4940 | | |

| Full Name | JAMES W SCOTT | SSN | |
|---|---|---|---|
| Composite Address | 3801 MARQUETTE PL APT | Phone | |
| City, State, Zip | SAN DIEGO, CA 92106-1019 | Date First Seen | 199007 |
| Date Of Birth | 19680700 | Date Last Seen | 199012 |
| Source | EQUIFAX 1010 WASHINGTON AVENUE STAMFORD, CT 06901 (770) 740-4940 | | |

| Full Name | JAMES W SCOTT | SSN | |
|---|---|---|---|
| Composite Address | 2020 NW 64TH AVE | Phone | |
| City, State, Zip | SUNRISE, FL 33313-3931 | Date First Seen | 198906 |
| Date Of Birth | 19680700 | Date Last Seen | 199012 |
| Source | EQUIFAX 1010 WASHINGTON AVENUE STAMFORD, CT 06901 (770) 740-4940 | | |

| Full Name | JAMES W SCOTT | SSN | |
|---|---|---|---|
| Composite Address | NAS NORTH IS APT | Phone | |
| City, State, Zip | SAN DIEGO, CA 92135 | Date First Seen | 199001 |
| Date Of Birth | 0 | Date Last Seen | 199001 |
| Source | EQUIFAX 1010 WASHINGTON AVENUE STAMFORD, CT 06901 (770) 740-4940 | | |

| Full Name | JAMES WESLEY SCOTT | SSN | |
|---|---|---|---|
| Composite Address | 1756 NE 13TH ST | Phone | |

# EXHIBIT B

| Reference Number:<br>N/A | Consumer Number:<br>12642635 | Case Number:<br>94715905 | Document Date:<br>5/4/2018 |
|---|---|---|---|

| City, State, Zip | DEERFIELD BEACH, FL 33442-7949 | Date First Seen | 201603 |
|---|---|---|---|
| Date Of Birth | 19680717 | Date Last Seen | 201611 |
| Source | EXPERIAN<br>955 AMERICAN LANE<br>SCHAUMBURG, IL 60173-4998<br>(714) 830-5771 | | |

| Full Name | JAMES W SCOTT | SSN | |
|---|---|---|---|
| Composite Address | 3457 DEER CREEK COUNTRY CLUB BLVD | Phone | |
| City, State, Zip | DEERFIELD BEACH, FL 33442-8427 | Date First Seen | 201603 |
| Date Of Birth | 0 | Date Last Seen | 201605 |
| Source | EQUIFAX<br>1010 WASHINGTON AVENUE<br>STAMFORD, CT 06901<br>(770) 740-4940 | | |

| Full Name | JAMES SCOTT | SSN | |
|---|---|---|---|
| Composite Address | 9705 BOCA GARDENS CIR N APT C | Phone | |
| City, State, Zip | BOCA RATON, FL 33496-3778 | Date First Seen | 201312 |
| Date Of Birth | 0 | Date Last Seen | 201508 |
| Source | EXPERIAN<br>955 AMERICAN LANE<br>SCHAUMBURG, IL 60173-4998<br>(714) 830-5771 | | |

| Full Name | JAMES W SCOTT | SSN | |
|---|---|---|---|
| Composite Address | 1756 NE 13TH ST | Phone | |
| City, State, Zip | FORT LAUDERDALE, FL 33304-1846 | Date First Seen | 201303 |
| Date Of Birth | 0 | Date Last Seen | 201502 |
| Source | EQUIFAX<br>1010 WASHINGTON AVENUE<br>STAMFORD, CT 06901<br>(770) 740-4940 | | |

| Full Name | JAMES W SCOTT | SSN | 5033 |
|---|---|---|---|
| Composite Address | 1756 NE 13TH ST | Phone | |
| City, State, Zip | FORT LAUDERDALE, FL 33304-1846 | Date First Seen | 201301 |
| Date Of Birth | 19680717 | Date Last Seen | 201412 |
| Source | EXPERIAN<br>955 AMERICAN LANE<br>SCHAUMBURG, IL 60173-4998<br>(714) 830-5771 | | |

| Full Name | JIM W SCOTT | SSN | 5033 |
|---|---|---|---|
| Composite Address | 1756 NE 13TH ST | Phone | |
| City, State, Zip | FORT LAUDERDALE, FL 33304-1846 | Date First Seen | 201301 |
| Date Of Birth | 19680717 | Date Last Seen | 201412 |
| Source | EXPERIAN<br>955 AMERICAN LANE<br>SCHAUMBURG, IL 60173-4998<br>(714) 830-5771 | | |

| Full Name | SCOTT JAMES | SSN | 5033 |
|---|---|---|---|
| Composite Address | 1756 NE 13TH ST | Phone | |